**Carson SHEPARD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–1282A411.

Court of Appeals of Indiana, First District.

Aug. 1, 1983.

Rehearing Denied Sept. 8, 1983.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Presiding Judge (Writing by designation).

Carson Shepard (Shepard) appeals a conviction of the offense of Battery by means of a deadly weapon, a class C felony. He was sentenced to a prison term of eight (8) years. On appeal, he raises the following two issues:

1. Whether the trial court erred in granting the State's motion in limine as it related to prior threats made to Shepard.

2. Whether the trial court erred in sustaining the State's objection to Defendant's exhibit 149.

We reverse.

The facts most favorable to the State show that a "shoot out" occurred in the 900 block of North Parker Street in Indianapolis, Indiana, on September 2, 1981. Several days prior to September 2, Ronnie Shepard (Ronnie) was assaulted by Randy West (Randy) while walking down an alley near North Parker, after Ronnie's companion, Carol Skaggs (Skaggs), called Randy "a queer". Ronnie told his father, Carson Shepard, about the incident and Shepard then took Skaggs to the prosecutor's office and attempted to obtain a warrant on Randy. The prosecutor's office refused, claiming that there was nothing they could do because it was a neighborhood dispute.

Shortly after Shepard returned home, he exchanged heated words with Randy and Patricia West as they walked in front of his property. This eventually led to an argument between Shepard and Randy's father. As a result, the police arrived and talked to both households. Shepard stated that he told police he would stomp Randy if he ever bothered his boy again. A police officer, Lawrence Turner, stated that Shepard threatened to shoot Randy.

Later on in the evening, Randy placed a telephone call to his brother and within an hour of the call, Gary West, Lester Cross (Cross), Jerry Rhotan, and David Johnston arrived on Parker in a van. Gary West was armed with a nine millimeter automatic loaded with fourteen live rounds of ammunition. Cross was armed with a .38 Colt revolver given to him by Gary West. Before leaving, Cross unloaded the .38 Colt and reloaded it so that the first round fired would be bird shot pursuant to Gary West's directions. Apparently, one of the men picked up a club prior to leaving because later that day, the police found a club on Parker. At trial, Gary West testified that it had come from his house.

Upon their arrival, all four men got out of the van and went to the West residence. After a short period of time, the four men left the West residence and proceeded toward the Shepard home. As the men approached, Shepard went into his house and retrieved a shotgun. It is disputed as to who shot first, however, it was at this time that the "shoot out" began. The incident resulted in the death of Jerry Rhoton and injury to Cross.

Shepard presents two basic arguments which are interrelated. First, he argues that the trial court's granting of the State's motion in limine prevented him from presenting critical evidence of threats made to him by various members of the West clan prior to September 2, 1981. As a result, he maintains that he was severely prejudiced in presenting his claim of self-defense.

Secondly, Shepard offered into evidence Defendant's Exhibit 149, which was an accurate transcript of his statement to the

police. The statement contained a description of a threat made to him by a member of the West household prior to September 2, 1981. Such evidence would have shed light upon his state of mind at the time of the offense.

We agree with Shepard that the trial court erred when it refused to allow him the opportunity to submit relevant evidence supporting his theory of self-defense.

■ The elements of self-defense are codified at Ind.Code 35–41–3–2 (Supp.1982). That section reads in relevant part:

"(a) A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

. . . . .

(d) Notwithstanding subsections (a), (b), and (c) of this section, a person is not justified in using force if:

(1) He is committing, or is escaping after the commission of, a crime;

(2) He provokes unlawful action by another person, with intent to cause bodily injury to the other person; or

(3) He has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

A meritoriously asserted claim of self-defense is legal justification for an otherwise criminal act. *Jennings v. State,* (1974) 262 Ind. 476, 318 N.E.2d 358. The guidelines for our review of a claim of self-defense were established by our supreme court in

*King v. State,* (1968) 249 Ind. 699, 234 N.E.2d 465 in which the court stated:

Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:

(1) he acted without fault

(2) he was in a place where he had a right to be, and

(3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm.

The question of the existence of such danger at the time of the killing, the necessity or apparent necessity for the use of force employed by the defendant, as well as the amount of force necessary to resist an attack, can only be determined from the standpoint of the defendant at the time and under all existing circumstances. *Nuss v. State,* (1975) 164 Ind.App. 396, 328 N.E.2d 747. When a defendant claims that he acted in self-defense, evidence legitimately tending to support his theory is admissible. *Gunn v. State,* (1977) 174 Ind.App. 26, 365 N.E.2d 1234. However, this does not mean that the jury is required to believe the defendant's testimony regarding the alleged use of self-defense. *Nuss, supra.*

■ Examination of the record in this case shows that when Skaggs was questioned by the police on September 3, 1981, she set out in detail that within days of September 2, 1981, Randy West's wife, Patricia, had threatened Shepard's son that she was "going to have a bunch of guys come up and beat him up and that their house was going to come to the ground". Skaggs restated the above in an offer to prove at trial. The prosecutor did not contest the offer and in fact, stipulated that this threat had been communicated to Shepard prior to September 2, 1981. In addition, Defendant's Exhibit 149 contains explicit statements from Shepard about the prior threats made to him by a member of the West clan. Clearly, these threats are relevant to Shepard's defense and his claim of having a good faith belief of great bodily harm. A defendant's belief of "apparent

danger" does not require that the danger be actual, but only that the belief be in good faith. *Franklin v. State,* (1977) 266 Ind. 540, 364 N.E.2d 1019.

 Furthermore, it should be noted that these threats were not offered for the truth of the matter asserted, but only to explain Shepard's state of mind as it related to his claim of self-defense. As such, this evidence was not inadmissible hearsay. *See, Southard v. State,* (1981) Ind.App., 422 N.E.2d 325.

 The trial court erred when it refused to permit Shepard to introduce evidence supporting his self-defense theory. Thus, we reverse and remand this case for a new trial.

Reversed and remanded.

BUCHANAN, C.J., and SHIELDS, J., concur.