**CARBO, INC. d/b/a Black Horsemen Liquors and Terrill Triggs, Defendants–Appellants,**

v.

**Kathy LOWE, as Administratrix of the Estate of William C. Lowe, Jr., deceased, Plaintiff–Appellee.**

No. 37A03–8707–CV–184.

Court of Appeals of Indiana, Third District.

April 21, 1988.

Daniel A. Gioia, Kathleen M. Maicher, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for defendants-appellants.

Harry A. Psimos, Mark A. Psimos, John Kappos, Merrillville, for plaintiff-appellee.

GARRARD, Presiding Judge.

Appellants, Carbo, Inc. doing business as Black Horsemen Liquors and Terrill Triggs, appeal from a jury verdict against them awarding appellee Kathy Lowe $500,-000.00 in a wrongful death action. We reverse.

The facts most favorable to the verdict show that the decedent, William Lowe, entered the Black Horsemen Liquor Store shortly after 11:00 p.m. on December 8, 1981. Terrill Triggs, a part-time clerk at the liquor store, and Robert Freeland, the establishment's owner, were stocking the coolers at that time. Triggs returned to the counter upon hearing a bell indicating the door had opened and observed three men approaching the counter. Two of the men were masked and carrying handguns. They flanked Lowe. Triggs called out to Freeman that a hold-up was under way and reached for a loaded .357 magnum revolver that Freeland kept underneath the counter. Before he could reach the gun the would-be robbers fired a volley of shots at Triggs but missed. He returned their fire with a single shot which apparently struck a plexi-glass door. All the men ducked behind their respective sides of the counter.

At this point Lowe, a Gary Public Transportation Corporation employee, vaulted over the counter and drew another shot from the retreating Triggs. Lowe had no mask, no gun and was wearing a Gary PTC jacket. The bullet apparently hit Lowe in the back left chest as he lay across the counter, traveled downward piercing the left lung and other vital organs and came to rest in the abdomen having pierced the

skin in the abdomen as well. Lowe lunged forward toward Triggs and Triggs fired again, apparently missing, but at close enough range to leave gun powder residue on Lowe's jacket sleeve. Lowe fell face down at Triggs' feet. Freeland appeared and screamed at Lowe not to move or he would be killed. However, Lowe was already dead or dying. Freeland had already summoned the police and upon their arrival the parties discovered that the two armed, masked men had fled unnoticed. They were never apprehended. Lowe's widow brought this wrongful death action for negligence.

Carbo, Inc. and Triggs raise five issues for our review. Because we reverse we reach only the first issue.

*Issue*

Did the evidence prove, as a matter of law, that appellants acted in self defense and justification such that the trial court erred in denying appellants' motions for judgment on the evidence?

■ Carbo, Inc. and Triggs contend that the tort of killing Lowe was excused and justified as a matter of law because Triggs was acting in self defense when he shot and killed Lowe. A meritoriously asserted claim for self defense is a legal justification for an otherwise criminal act such as assault or homicide. *Shepard v. State* (1983), Ind.App., 451 N.E.2d 1118, 1120. Where one takes the life of another and claims self defense he can only be successful in that self defense claim if 1) he acted without fault, 2) he was in a place he had a right to be, and 3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm. *Simmons v. State* (1987), Ind., 506 N.E.2d 25, 28; *Shepard v. State, supra,* 451 N.E.2d at 1120; *Degenias v. State* (1979), 179 Ind.App. 684, 386 N.E.2d 1230, 1232.

■ Additionally, in all self-defense claims, not just the claims where one kills in self defense, the force employed must not be out of proportion to the apparent urgency of the situation. *Degenias v. State, supra,* 386 N.E.2d at 1231; *Surratt*

*v. Petrol, Inc.* (1974), 160 Ind.App. 479, 312 N.E.2d 487, 496; *Yingst v. Pratt* (1966), 139 Ind.App. 695, 220 N.E.2d 276, 279. The questions of the existence of danger at the time of the killing, the necessity or apparent necessity of the use of force employed by a person, and the amount of force necessary to resist an attack, can only be determined from the standpoint of the defendant at the time and under all the existing circumstances. *Shepard v. State, supra,* 451 N.E.2d at 1120.

Both sides in this appeal make extensive arguments in their briefs regarding the only two Indiana cases concerning liability to an innocent bystander or third party injured in a situation where a person is defending himself from another or attempting to stop a crime in progress. In *Yingst v. Pratt, supra,* 220 N.E.2d at 279 the court, reversing a jury verdict, held that in a situation where a bartender attempted to take a gun away from a would-be robber and the gun discharged thereby hitting a third party patron of the bar, the bartender was excused from liability. The court expressed the great public interest in the prevention of crime and the speedy apprehension of criminals. Considering the citizen's role in that public policy it stated:

To that end the victim of a crime, as vicious as armed robbery, during the course of such criminal act, is excused, justified and to be held privileged from ordinary resistance which might otherwise cause actionable damage.

220 N.E.2d at 279.

*Surratt v. Petrol, Inc., supra,* is important because of its comments on *Yingst.* *Surratt* interpreted *Yingst* to mean that reckless conduct might be disproportionate in a violent crime situation. Under *Yingst,* the *Surratt* court noted a citizen's mere negligence, or failure to use reasonable care was excused as a matter of law due to the right to arrest and prevent the crime *and* the emergency nature of the situation. The *Surratt* court then held that, on the other hand, where the felony is *not* one of violence and the sudden emergency which attends its commission has passed, the standard to be applied regarding injuries to

third parties is that the person defending himself or attempting to make an arrest must use reasonable and ordinary care.

■ The focal points of *Yingst* and *Surratt* which are important to the case at hand concern the justification of injuring or killing an innocent bystander while attempting to defend oneself or while attempting to prevent the commission of a crime. Logically, for such justification to exist, there must exist a valid claim of self defense or legitimate effort to prevent the commission of a crime. It is neither possible nor necessary to totally separate out of this justification for separate consideration the victim's right of self defense. The implicit threat to the safety of the victim is a strong operating force in the determination that the use of deadly force is justified in attempting to prevent armed robbery.

Although appellants raise the question in the context of the denial of a motion for judgment on the evidence, to find error would require us to overturn the verdict of the jury in this case. On appeal, it is our duty to sustain the jury's verdict unless we are confident that no reasonable jury could have reached the result upon the evidence before it. In essence, that also states the standard for reviewing the denial of Lowe's motion. It is appropriate for us to reverse if we are convinced that from the evidence the verdict can rest on no more than speculation or conjecture.

■ Determining whether the evidence is sufficient requires both a quantitative and qualitative analysis. If opposite conclusions can be drawn reasonably, then the evidence cannot be said to be insufficient. Quantitatively, evidence may fail only if it is absent, that is only where there is none at all. Qualitatively, however, it fails when it cannot be said reasonably that the intended inference may logically be drawn therefrom. The failure of inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. *American Optical Co.*

*v. Weidenhamer* (1983), Ind., 457 N.E.2d 181, 183–84; *Monumental Life Insurance v. Franko* (1985), Ind.App., 486 N.E.2d 608, 610–11. We must, therefore, examine the three elements which excuse killing in self defense using this standard of review.

■ No reasonable jury could have determined that Triggs had been the initial aggressor. The evidence showed unequivocally that the aggression was started by two armed masked men who entered the liquor store. Likewise we are confident that no reasonable jury could have determined that Triggs was not in a place he had a right to be. The unrefuted evidence was that Triggs was an employee of Black Horsemen Liquors and that he was engaged in his regular duties at the time of the incident.

Further, we are confident that no reasonable jury in light of the circumstances could have determined that Triggs was not in real danger of death or great bodily harm, or not in such apparent danger as caused him to fear death or great bodily harm. We are all acutely aware of the tragic consequences to Lowe and his family from the events of that evening. We must also be aware, however, of the position in which Triggs found himself. The three men entered together. While Lowe was not masked, was in fact unarmed and had frequented the liquor store, Triggs nevertheless had no certain knowledge as to whether Lowe was one of the robbers or not. Certainly he might have been.

Not only were the other two men carrying guns, they opened fire. When Lowe, without explanation, vaulted over the counter, Triggs was entitled to believe, as he did, that he was being attacked in pursuance of a robbery attempt. Had he hesitated to confirm the facts, he might himself have been killed.

It would be undue speculation for the jury to find that Triggs was not in apparent danger of death or great bodily harm in light of the circumstances.[1] Under these

---

1. Moreover, the fact that Triggs was fired upon by a group of men using handguns means that his use of a handgun in response was not disproportionate to the situation. The use of a handgun to defend oneself against would-be

circumstances, we must conclude that Triggs' actions were excused just as they would have been had he fired at one of the actual robbers and the bullet had struck Lowe by accident. As a matter of law Triggs was justified in killing in self defense.[2]

It follows that the verdict may not stand. The judgment is reversed with instructions to enter judgment for the defendants.

Reversed.

HOFFMAN and NEAL, JJ., concur.

robbers who have fired a handgun is a proportional response.

**2.** This conclusion is reinforced by the decision in *Yingst* which cited with approval the position

taken in the Restatement of Torts, Second, that the crime of robbery *per se* is a valid excuse for using deadly force to prevent its occurrence.