Adrian **BRAND, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0104–CR–242.

Court of Appeals of Indiana.

April 29, 2002.

J. Richard Kiefer, Kiefer & McGoff, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Adrian Brand was convicted, following a jury trial, of voluntary manslaughter, a Class A felony. The trial court sentenced Brand to the Indiana Department of Correction for fifty years. Brand now appeals his conviction and resulting sentence. We reverse.

### Issue [1]

Brand raises two issues for our review, one of which we find dispositive: Whether the trial court properly excluded testimony offered by Brand to prove his state of mind when he fatally shot Lickliter.

### Facts and Procedural History

The facts reveal that on February 8, 1999, Brand, age sixteen, was riding in an automobile with several friends when they

---

[1]. Brand also raises the issue of whether the trial court properly imposed sentence. Because we have determined that the trial court committed reversible error in excluding Brand's offered testimony regarding the reasonableness of his fear of Lickliter, we need not address this issue.

encountered Michael Lickliter riding a bike. Lickliter, who was a friend of some of the youths in the car, stopped his bike alongside the automobile. After conversing with the front seat passenger, Lickliter went around to the back of the car and told Brand, who was sitting in the backseat, to roll down his window. After Brand complied, Lickliter slapped Brand twice in the face and warned him not to touch a female friend again. Lickliter was referring to a friend whom Brand had slapped several days earlier. Brand took no immediate action to Lickliter's slap and verbal warning. However, Brand felt that he had been "punked"[2] in front of his friends by Lickliter.

Thereafter, Brand contacted his girlfriend and asked her to call Lickliter and inquire "what his problem was." R. 462. Brand then went over to his girlfriend's house as he typically did on Monday nights because her parents were out bowling. Because his girlfriend was unable to contact Lickliter by phone, Brand requested that she page him. After being paged a second time, Lickliter showed up at the girlfriend's residence.

Soon afterward, Brand and Lickliter become involved in a verbal altercation whereupon Lickliter told Brand "bring your ass down there and you'll get your ass kicked—see if you don't get your ass kicked." R. 174. Lickliter further told Brand "I'm gonna f* * * you up." R. 472. Brand responded by saying "well, we will f* * *ing see." R. 175. The verbal altercation culminated with the two youths agreeing to engage in a fistfight in a nearby alley. Brand immediately left his girlfriend's house and proceeded to the alley

where the fight was to commence. En route, Brand changed his mind about fighting and ran toward his residence. However, Lickliter, who was riding his bike, caught up to Brand in an alley. Lickliter then got off his bike, put the kickstand down, took off his coat, and placed the article of clothing on the bike. After a brief scuffle between the two youths,[3] Brand pulled his semi-automatic handgun from his pants pocket and shot Lickliter four times.[4]

As Brand fled from the scene, he encountered a woman and told her "you didn't see nothing, bitch." R. 156. Thereafter, Brand hastily disposed of his handgun and the shirt he was wearing. Returning home, Brand told his father a lie. Brand stated that Lickliter had pulled a handgun on him and that he had taken the firearm from the youth and shot toward Lickliter's legs and feet. Brand's father immediately notified the police. While awaiting the police, Brand called his girlfriend and asked her to tell the lie that Lickliter had pulled a handgun on him and that after a brief struggle, he shot Lickliter with Lickliter's own gun. In addition, Brand instructed his girlfriend to dispose of the bullets that were located in his jacket at her house.

Lickliter ultimately died from his injuries. Donald Brake, a friend of Lickliter's, arrived at the scene of the crime shortly after Lickliter was shot. No weapons were recovered from Lickliter's person. Consequently, on February 19, 1999, the State charged Brand with murder, a felony, and carrying a handgun without a license, a Class A misdemeanor. Brand

---

**2.** When someone hits you and you let him do it, you get "punked." R. 426.

**3.** Brand testified at trial that Lickliter shoved him to the ground and as he lay supine, Lickliter kicked him.

**4.** Brand further testified that he purchased the gun for protection after his mother was robbed at her place of employment.

later pled guilty to the handgun charge. On January 8, 2001, Brand's trial on the murder charged commenced. Brand's theory at trial was that he shot Lickliter in self-defense. Three days later, the jury found Brand guilty of voluntary manslaughter, a Class A felony. The trial court sentenced Brand to the Indiana Department of Correction for fifty years. This appeal ensued. Additional facts will be provided when necessary.

*Discussion and Decision*

### I. Self–Defense

■ At trial, Brand argued that he shot Lickliter in self-defense. "Self-defense is recognized as a valid justification for an otherwise criminal act." *Miller v. State*, 720 N.E.2d 696, 699 (Ind.1999). The elements of self-defense are defined by statute:

> A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself. . . .

Ind.Code § 35–41–3–2(a). Force is not justified if the defendant enters into combat with another person or is the initial aggressor, unless the defendant communicates an intent to withdraw and the other person nevertheless continues or threatens to continue unlawful action. Ind.Code § 35–41–3–2(d)(3).

■ Essentially, self-defense is established if a defendant: (1) was in a place where the defendant had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *See Wallace v. State*, 725 N.E.2d 837, 840 (Ind.2000); *Jordan v. State*, 656

N.E.2d 816, 817 (Ind.1995). The State carries the burden of disproving self-defense. *Brown v. State*, 738 N.E.2d 271, 273 (Ind.2000). Thus, once a defendant claims self-defense, the State bears the burden of disproving at least one of the elements beyond a reasonable doubt. *Id.* The State may meet its burden of proof by rebutting the defense directly, by affirmatively showing that the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief. *Id.* "The amount of force used to protect oneself must be proportionate to the urgency of the situation. 'Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator.' " *Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind.Ct.App.1999) (citations omitted).

■ At trial, Brand argued that he had a reasonable belief that deadly force was necessary to protect himself when he shot Lickliter. Brand testified that during the altercation in the alley, Lickliter reached behind his back and said "I've got something for you." R. 472. Brand further testified that he grabbed his handgun and shot Lickliter because he believed that Lickliter was immediately reaching for a gun. Although the trial court permitted Brand to testify as to the events and his general fear and apprehension on February 8, 1999, the trial court refused to admit evidence of certain prior events and facts that formed the basis for the reasonableness of Brand's fear of Lickliter. Brand argues that the trial court erred in barring him from presenting evidence at trial that Lickliter sold drugs, was a member of a gang, and had offered to sell him a firearm prior to the deadly shooting. The claim is that this evidence was admissible under the Indiana Rules of Evidence and highly

probative to self-defense because it illustrated the reasonableness of Brand's fear of attack by Lickliter and the need to defend himself.[5]

## II. Admission of Evidence

■■■ Brand first contends that the trial court committed reversible error in excluding testimony he offered at trial in order to show the reasonableness of his fear of deadly attack by Lickliter and the need to defend himself. We agree.

### A. Standard of Review

■■■ Our standard of review in this area is well settled. The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Spires v. State*, 670 N.E.2d 1313, 1315 (Ind.Ct.App.1996). In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Reaves v. State*, 586 N.E.2d 847, 857 (Ind.1992).

### B. Brand's Evidence

On January 5, 2001, the State filed a motion in limine with the trial court to prohibit Brand from introducing evidence that Lickliter sold drugs and was a member of a gang. *See* R. 19, Appellant's Appendix at 133. At the final pretrial conference, the court took the State's verbal and written motion under advisement. Subsequently, the trial court granted the State's motion in limine; however, the trial court offered to revisit the issue at the presentation of the defendant's case-in-chief.

At trial, defense counsel made an offer of proof that Brand would testify that Lickliter had previously sold him drugs, was a member of a gang, and had offered to sell him a firearm. To corroborate Brand's testimony, defense counsel further made an offer of proof that Detective Marcus Kennedy would testify that Lickliter and his friend Brake were both members of the "Gangster Disciples." In addition, defense counsel offered that Brake would testify that he and Lickliter were members of a gang.[6] Moreover, defense counsel made an offer of proof that Rocky Zerme-

---

**5.** We note that Brand also asserts that the restrictions of his testimony violated the Sixth Amendment and Fourteenth Amendment of the United States Constitution and Article I, Section 13 of the Indiana Constitution. Under the United States Constitution, a defendant enjoys some degree of federal constitutional right to present a defense. *See United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Moreover, the Indiana Constitution "places a unique value upon the desire of an individual accused of a crime to speak out personally in a courtroom and state what in his mind constitutes a predicate for his innocence of the charges." *Campbell v. State*, 622 N.E.2d 495, 498 (Ind. 1993). Our disposition of this appeal is consistent with these holdings, and it is sufficient to decide the appeal on the grounds that the trial court erred in excluding admissible and

relevant testimony and the error was not harmless as a matter of Indiana law. *See Fleener v. State*, 656 N.E.2d 1140, 1141–42 (Ind.1995) (distinguishing harmlessness for federal constitutional purposes from state harmless error rules). We need not determine whether these constitutional provisions required such a holding by this court.

**6.** The record reveals that defense counsel planned to provide the jury with evidence to infer that Brake removed a weapon from Lickliter's person after Brand shot him; the theory being that Brake had both the opportunity and motive to remove a weapon because he was in close proximity to the shooting, and he and Lickliter were members of the same gang.

no would testify that Lickliter was affiliated with a gang.[7]

The trial court affirmed its original ruling on the State's motion in limine and further prohibited the defense from presenting any evidence that Lickliter offered to sell Brand a gun or that Lickliter was a member of a gang. The trial court excluded the evidence based upon its determination that the prejudice outweighed the probative value of the evidence.

## 1. Character Evidence to Prove Conduct

■■ Generally, evidence of a person's character is inadmissible to prove action in conformity therewith on a particular occasion. *Brooks v. State,* 683 N.E.2d 574 (Ind.1997); Evid. Rule 404(a). However, Indiana Evidence Rule 404 provides in pertinent part that:

(a) Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

\* \* \*

(2) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. . . .

Evid. R. 404(a)(2).[8] Thus, Evidence Rule 404(a)(2) provides an exception to the rule against introducing evidence to imply that

a person acted in conformity with character on a particular occasion. However, Evidence Rule 404(a)(2) does not contemplate that character evidence will offer a glimpse into a defendant's mind at the time he acted · in self-defense. This proposition sought to be proved by the defense is different than the one espoused in Rule 404(a)(2).

■■■ Introduction of specific acts to prove the defendant's state of mind would support the proposition that the defendant had a reasonable belief that deadly force was necessary. In contrast, introduction of specific acts as victim character evidence, as permitted by Rule 404(a)(2), would support the proposition that the victim was using unlawful force. These are two separate and distinct propositions, and in fact constitute separate elements of self-defense. Moreover, because the general exclusionary rule of Evidence Rule 404(a) applies only when character evidence is used for the purpose of proving action in conformity with his character, it is apparent that when character evidence is utilized for some other purpose, such as to show defendant's state of mind, the rule is inapplicable. *See* Evid. R. 404(a).

In the present case defense counsel was attempting to prove the defendant's state of mind at the time of the shooting, not to prove Lickliter's conduct. Therefore, we do not reach the question of whether Brand's offered testimony should have been admitted as character evidence, i.e., as evidence from which the jury could infer that the victim, at the time of the

---

**7.** Specifically, Zermeno would testify that Lickliter had told him that he and Brake were in a gang and that Brake would "back him up" whenever Lickliter got into a fight.

**8.** If character evidence falls under one of the exceptions in Evidence Rule 404(a), Evidence Rule 405 establishes the methods by which it may be proved. Rule 405(a) permits proof of

such evidence by testimony as to reputation, testimony in the form of an opinion, and, on cross-examination only, questions concerning relevant specific instances of conduct. Evid. R. 405(a). Evidence of specific instances of conduct also may be used when character is an essential element of a charge, claim, or defense. Evid. R. 405(b).

shooting, was likely to have been behaving in accordance with his violent character. Instead, we are faced with the sole issue of whether Brand's proffered evidence should have been admitted to bolster his assertion that his belief in the need for force was reasonable.

### 2. Evidence To Show Reasonableness of Fear

Self-defense requires reasonable apprehension of harm by the defendant. *See* Ind.Code § 35–41–3–2. When a defendant claims that he acted in self-defense, evidence legitimately tending to support his theory is admissible. *Shepard v. State*, 451 N.E.2d 1118, 1120 (Ind.Ct. App.1983). The Indiana Supreme Court has held that evidence of the victim's character may be admitted to show that the victim had a violent character giving the defendant reason to fear him. *Holder v. State*, 571 N.E.2d 1250, 1254 (Ind.1991). The victim's reputation for violence is pertinent to a claim of self-defense. *Brooks*, 683 N.E.2d at 576. Thus, the victim's reputed character, propensity for violence, prior threats and acts, if known by the defendant, may be relevant to the issue of whether a defendant had fear of the victim prior to utilizing deadly force against him. Therefore, a defendant is entitled to support his claim of self-defense by introducing evidence of matters that would make his fear of the victim reasonable.[9]

However, the evidence introduced by a defendant to show his apprehension of the victim must imply a propensity for violence on the part of the victim. *See Davis v. State*, 481 N.E.2d 387, 390 (Ind.1985). Moreover, the evidence must relate specifically to the victim, not to his family or a third party such as a close friend or business associate. *See e.g., Schmanski v. State*, 270 Ind. 331, 385 N.E.2d 1122, 1125 (1979). Although the victim's threats or violence need not be directed toward the defendant, the defendant must have knowledge of these matters at the time of the fatal confrontation between the victim and the defendant. *Holder*, 571 N.E.2d at 1254; *Feliciano v. State*, 477 N.E.2d 86, 88 (Ind.1985). In addition, a defendant must first introduce appreciable evidence of the victim's aggression to substantiate the claim of self-defense before evidence is admissible to show the reasonableness of the defendant's fear of the victim. *Holder*, 571 N.E.2d at 1254; *Phillips v. State*, 550 N.E.2d 1290, 1297 (Ind.1990); *Graham v. State*, 535 N.E.2d 1152, 1154 (Ind.1989).

In the present case, Brand's offer of testimony that Lickliter sold drugs, was a member of a gang, and had previously offered to sell him a firearm certainly implies that Lickliter had access to a firearm and was inclined toward violent behavior. Furthermore, the offered evidence relates to Lickliter and it appears from the record that Brand had knowledge of these matters prior to the fatal shooting. Also, we believe that Brand showed appreciable evi-

---

**9.** We note that this is not a new legal concept in Indiana. Our supreme court long ago stated that:

As, in personal conflicts, every man is permitted, within reasonable limits, to act upon appearance and to determine for himself when he is in real danger, it would seem to follow as an inevitable consequence that whoever relies upon appearances, and a reasonable determination upon such appearances, as a defense in a case of homi-

cide, ought to be allowed to prove every fact and circumstance known to him and connected with the deceased which was fairly calculated to create an apprehension of his own safety. Any narrower rule than this would, we think, prove inadequate to full justice in all cases of homicide, and would, in many cases, operate as a serious abridgement of the law of self-defense.

*Boyle v. State*, 97 Ind. 322, 326 (1884).

781

dence of Lickliter's aggression and as such, this should not operate as a bar to the admission of the subject testimony. Evidence was introduced at trial that Lickliter had struck Brand in the face and had challenged him to a fight prior to the killing. Thus, Brand satisfied the foundational requirements for the admission of the evidence to permit an inference that his fear of Lickliter was reasonable.

With regard to relevancy, Brand's testimony that Lickliter sold drugs, was a member of a gang, and had offered to sell him a handgun was probative irrespective of the truth of the matter asserted. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid. R. 401; *Hardin v. State*, 611 N.E.2d 123, 127 (Ind.1993). Evidence that is not relevant is not admissible. Evid. R. 402. All relevant evidence is admissible, except as otherwise provided by law. *Id.*

When a claim of self-defense is interposed, "[a]ny fact which reasonably would place a person in fear or apprehension of death or great bodily injury is admissible." *Russell v. State*, 577 N.E.2d 567, 568 (Ind.1991); *see also Shepard*, 451 N.E.2d at 1120. In addition, a defendant's belief of "apparent danger" does not require that the danger be actual, but only that the belief be in good faith. *Shepard*, 451 N.E.2d at 1120–21. "The question of the existence of such danger, the necessity or apparent necessity, as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the then existing circumstances." *French v. State*, 273 Ind. 251, 403 N.E.2d 821, 824 (1980) (quoting *Martin v. State*, 260 Ind. 490, 296 N.E.2d 793 (1973)). Focusing on the "standpoint

of the defendant" means at least two things: (1) the trier of fact must consider the circumstances as they appeared to the defendant, rather than to the victim or anyone else; and (2) the defendant's own account of the event, although not required to be believed, is critically relevant testimony. *Hirsch v. State*, 697 N.E.2d 37, 43 n. 10 (Ind.1998).

Brand's offered testimony was relevant to show the reasonableness of his fear or apprehension of Lickliter. The evidence was offered by Brand primarily to highlight his thought processes during the fatal event and was relevant regardless of whether Brand was in actual danger from Lickliter. This is especially true considering that the jury was required to examine the self-defense claim from the standpoint of Brand. The jury should have been afforded the opportunity to consider the circumstances surrounding the fatal shooting as they appeared to Brand. We have previously stated that "[a] defendant is denied the right to exercise reasonable force in response to an unwarranted attack when he is not permitted to present evidence relevant to his claim of self-defense. When a defendant claims self-defense, evidence legitimately tending to support his theory is admissible." *Gunn v. State*, 174 Ind.App. 26, 365 N.E.2d 1234, 1240 (1977).

In addition, we conclude that the admission of this evidence would not violate Indiana Evidence Rule 403 which provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." The admission of Brand's testimony that Lickliter sold drugs, was a member of a gang, and had offered to sell Brand a firearm would certainly disparage the victim, Lickliter, in the eyes of the jury and prejudice the State's criminal case vis-à-vis Lickliter. Undoubtedly, the evidence would place the victim, Lickliter, in a bad light before the

jury. However, we cannot say that this prejudice was unfair or that the unfair prejudice, if any, substantially outweighed the probative value described above. Brand had a right to present evidence at trial of the reasonableness of his fear of Lickliter.

Finally, because the evidence was not offered to prove the truth of the matter asserted, but rather to describe the circumstances under which Brand operated and which resulted in Lickliter's death, the testimony does not constitute hearsay. *See Miller*, 720 N.E.2d at 704. Thus, Brand's offered testimony did not constitute hearsay and no exception to the hearsay rule was required. Consequently, we hold that the trial court erred in excluding Brand's testimony that Lickliter sold drugs, was a member of a gang and had offered to sell Brand a gun.

With regard to the offered testimony of Detective Kennedy, Brake, and Zermeno, their excluded testimony would have tended to corroborate the testimony of Brand regarding the reasonableness of his fear of Lickliter. While this testimony may have been cumulative, we believe that it was crucial to Brand's claim of self-defense considering his credibility was of utmost importance to his defense. *See Nuss v. State*, 164 Ind.App. 396, 328 N.E.2d 747, 754 (1975). The wrongful exclusion of any evidence that would tend to corroborate Brand's testimony or lend credence to his defense would not be without prejudice to his substantial rights. *Id.* Therefore, we find error in the trial court's exclusion of the three witness' testimony that Lickliter was a member of a gang.

Accordingly, the trial court erred in excluding Brand's testimony that Lickliter sold drugs, was a member of a gang, and had offered to sell Brand a handgun. In addition, we hold that the trial court erred in excluding witness testimony corroborating Brand's offered assertion that Lickliter was a member of a gang.

### C. Harmless Error

■ Our inquiry does not end here. We will find an error in the exclusion of evidence harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights. *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995); Ind. Trial Rule 61.

In *Miller v. State*, 720 N.E.2d 696, 699 (Ind.1999), the defendant claimed self-defense after shooting the unarmed victim at a gas station. Following a jury trial, he was found guilty of murder. *Id.* On direct appeal to the Indiana Supreme Court, the defendant argued in part that the court erred in excluding on hearsay grounds testimony which was offered by him to support his self-defense claim that he had a reasonable fear of the victim. *Id.* at 703. The defendant referred to two instances, the first being when a defense counsel attempted to have a witness testify to a statement made other than while testifying at trial. *Id.* at 704. The defense witness attempted to testify regarding his prior conversations with the defendant concerning the victim's propensity for violence. *Id.* Our supreme court held that "[i]n the absence of any showing that the statement was being offered for a reason other than to prove the truth of the matter asserted (or that it was not hearsay under Evid. R. 801(d) or an exception to the hearsay rule under Evid. R. 803)," the trial court properly sustained the State's hearsay objection *Id.*

The second instance involved the defendant attempting to testify that some of his friends had made him aware of the victim's threats against him in the days leading up to the fatal shooting. *Id.* The Indiana Supreme Court held that the evidence was not offered for the truth of the matter

asserted, but rather to describe the circumstances under which the defendant operated and which resulted in the victim's death. *Id.* Although the court found that the trial court erred in excluding the testimony as violative of the hearsay rule, the court deemed the error harmless. *Id.* at 705. The court explained:

Defendant established that [the victim] had a reputation for violence in the community. He also introduced evidence regarding his perceived fear of [the victim]: he described [the victim's] violent robbery of him including being struck with the butt of [the victim's] assault rifle and the threats made on his life during the encounter; he expressed his general fear of being shot by [the victim]; he was under the impression that [the victim] was armed with a weapon that day; and, he testified that he was frightened when he saw [the victim] at the gas station. Accordingly, in the light of all the evidence, the exclusion had a sufficiently minor impact on the jury so as to not affect the substantial rights of Defendant.

*Id.* at 705.

In the present case, Brand testified at trial that Lickliter was both taller and more muscular than him. In addition, Brand relayed to the jury that Lickliter slapped him hard twice in the face and had threatened him with bodily harm prior to the fatal shooting. Furthermore, Brand expressed his general fear of being shot by Lickliter and that he believed that Lickliter was armed with a handgun the day of the fatal shooting. However, the trial court barred Brand from presenting evidence establishing the reasonableness of his belief. Although being involved in the drug trade or being a member of a gang does not conclusively establish that a per-

son carries a dangerous weapon, it certainly can be inferred considering that people typically involved in the drug and gang culture are armed with dangerous weapons. Moreover, the testimony that Lickliter had offered to sell Brand a gun raises the inference that Lickliter had ready access to firearms. The excluded evidence collectively implies that Lickliter was not a law-abiding citizen and may have armed himself to protect his drug business and further his gang membership.

The truth of the matter of these assertions was not crucial, because the ultimate issue before the jury was the reasonableness of Brand's claim that he feared he was in danger. Nothing is more central to this issue than Brand's testimony; he should have been allowed to fully testify as to his actual belief that he was in imminent harm. Certainly, the circumstances bearing on Brand's state of mind at the time he shot Lickliter was of unique value. *See Hirsch,* 697 N.E.2d at 42. Moreover, because his credibility was at issue, Brand should have been allowed to present any and all corroborating evidence that formed the basis of his belief that Lickliter was armed with a handgun the day of the killing. Therefore, we believe that the jury was entitled to hear Brand's offered evidence and determine for itself whether or not Brand's fear of Lickliter was reasonable. *See e.g., id.; Nuss,* 328 N.E.2d at 755. We do not believe that the exclusion of the evidence had a "sufficiently minor impact on the jury" so as not to affect the substantial rights of Brand.

 Accordingly, we hold that the trial court's exclusion of Brand's offered evidence that Lickliter dealt drugs, was a member of a gang, and had offered to sell Brand a firearm [10] was reversible error.[11]

---

**10.** The exclusion of the evidence collectively rises to the level of reversible error. This evidence "went to the heart" of Brand's claim of self-defense and Brand's testimony was not cumulative of any evidence presented at trial or evidence that was available for presentation to the jury. However, we do not believe

that the excluded evidence viewed individually would require this court to reverse Brand's conviction and order a new trial.

**11.** The Fifth Amendment to the United States Constitution provides that no person shall "be

*Conclusion*

Based on the foregoing, we hold that the trial court committed reversible error in excluding Brand's offered evidence to show the reasonableness of his fear of Lickliter. We reverse and remand for a new trial.

Reversed.

KIRSCH, J., and SULLIVAN, J., concur.

subject for the same offense to be twice put in jeopardy of life or limb." The Indiana Constitution, Article 1, § 14 provides: "No person shall be put in jeopardy twice for the same offense." These constitutional directives against double jeopardy are codified in Indiana Code section 35–41–4–3. After examining the facts and circumstances of the present case, we do not believe that double jeopardy bars a retrial of Brand. *See, e.g., Hirsch v. State,* 697 N.E.2d 37, 44 (Ind.1998); *Nuss v. State,* 164 Ind.App. 396, 328 N.E.2d 747, 755 (1975).