Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**TIMOTHY J. O'CONNOR**
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DOMINICK IRBY,                         )
                                       )
    Appellant-Defendant,               )
                                       )
        vs.                        )    No. 49A02-1208-CR-660
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Plaintiff.                )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol Orbison, Judge
Cause No. 49G22-1206-FB-37426

**May 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Dominick Irby ("Irby") was convicted in Marion Superior Court of Class D felony Criminal Recklessness. Irby appeals and argues that the State did not present sufficient evidence to rebut his claim of self-defense.

We affirm.

**Facts and Procedural History**

The facts most favorable to the trial court's judgment reveal that on the evening of June 3, 2012, Irby provoked an altercation with his girlfriend, Jody Spate ("Spate") and her son Carl Kelley ("Kelley"). When Irby and Spate began dating, Irby was seventeen years old and Spate was either thirty-one or thirty-two years old. Their six-year relationship was punctuated with breakups, but they resumed their relationship in February 2012. Irby wanted to marry Spate and have children with her. In June 2012, Irby resided with his mother, while Spate lived in her own home with her children from previous relationships. Irby stayed at Spate's home from June 1 through June 3 in 2012.

On June 3, Spate and Irby had a disagreement shortly after they awakened and remained on bad terms throughout the day. In the evening, Spate decided that Irby needed to leave her home. Spate's older son, Kelley, agreed to drop Irby off at his house. Spate rode along. On the way to Irby's house, Irby repeatedly told Spate that he wanted to talk, but Spate refused to do so.

When they arrived in front of Irby's home and he remained in the car, Spate informed Irby that he needed to leave the car or she was calling the police. Irby asked to use her phone. Spate refused. Spate then exited the vehicle and calmly called out to the neighbor across the street to call 911. The neighbor did not call 911. Irby climbed from

2

the backseat to the front seat and exited the vehicle through the passenger side. He grabbed Spate by the wrist and attempted to grab her phone from her other hand. Spate resisted; trying to free her hand and get back in the car.

Kelley exited the vehicle and tried to intervene to protect his mother. Kelley was eighteen years of age, but Irby was sixty pounds heavier and four inches taller than Kelley. Kelley told Irby to leave his mother alone. When Irby ignored Kelley, Kelley went to the trunk and pulled out an aluminum baseball bat. Kelley approached Irby, but Irby grabbed the bat from Kelley, hit him in the back of the knee, and threw the bat in the yard. Irby simultaneously caused Spate to fall to the ground.

Spate told Kelley to go back to the scene of a nearby car accident they had passed along the way to ask the police for help. After Kelley left, Spate tried to walk away from Irby. Irby grabbed Spate's hand and bent her fingers back. Spate was concerned that Irby might break her fingers. Spate began to cry, but managed to remove her hand from Irby. Irby then grabbed Spate and threw her against the back of a sport utility vehicle that was parked in front his house. When Spate hit the ground, she fractured her ankle in three places. Irby then told Spate, "Since this relationship is over, I am going to show you how it feels to hurt." Tr. p. 37. Irby then grabbed Spate by the hair, and pulled her several feet across concrete sidewalk and driveway to the corner of the garage. During this time, he also threatened to kill Spate and her children if he had to serve any time in jail for the attack. When they reached the corner of the garage, Irby continued to stand over Spate screaming at her. A neighbor captured a cell phone video of Irby standing over Spate at the corner of the driveway.

3

At this point, Irby's Mother and Sister came out of the house. They told Irby to come inside. Irby replied, "You know I spent six years of my life with this, with her, trying to work on this. It's over. What's to stop me now from going over there and kicking her head in?" Tr. p. 42. A couple minutes later, Kelley returned with several police officers. The police placed Irby in handcuffs, and Spate was sent to the hospital in an ambulance.

Irby was arrested and charged with Class B felony Aggravated Battery (Count I) and Class C felony Aggravated Battery (Count II). Irby's two-day jury trial began on July 23, 2012. Irby's attorney requested that the court instruct the jury on Class D felony Criminal Recklessness as a lesser-included offense of Class B felony Aggravated Battery. The court granted this request. The jury found Irby guilty of Class D felony Criminal Recklessness, but not guilty of Class B felony Aggravated Battery (Count I) and Class C felony Aggravated Battery (Count II). On August 8, 2012, the court sentenced Irby to two and one-half years: one and one-half years to be served in community correction and one year suspended to supervised probation. Irby now appeals.

## I. Sufficiency of the Evidence

Irby argues that the state presented insufficient evidence to rebut his claim of self-defense. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the

4

probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

"Self-defense is recognized as a valid justification for an otherwise criminal act." Miller v. State, 720 N.E.2d 696, 699 (Ind.1999). The elements of self-defense are defined by statute: "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person: (1) is justified in using deadly force; and (2) does not have a duty to retreat; if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary."

Ind. Code § 35–41–3–2(c). "Notwithstanding subsections (c) through (e), a person is not justified in using force if: (1) the person is committing or is escaping after the commission of a crime; (2) the person provokes unlawful action by another person with intent to cause bodily injury to the other person; or (3) the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action."

Ind. Code § 35–41–3–2(g).

> Essentially, self-defense is established if a defendant: (1) was in a place where the defendant had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. The State carries the burden of disproving self-defense. Thus, once a defendant claims self-defense, the State bears the burden of disproving at least one of the elements beyond a reasonable doubt. The State may meet its burden of proof by rebutting the defense directly, by affirmatively showing that the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief. "The amount of force used to protect oneself must be proportionate to the urgency of the situation. Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator.

Brand v. State, 766 N.E.2d 772, 777, (Ind. Ct. App. 2002), trans. denied (internal citations omitted).

On the evening of June 3, 2012, Irby did have the right to be in front of his own home on Neptune Court. However, the evidence is indisputable that Irby instigated the violence that resulted in injuries to Spate. Irby testified that after he exited Spate's car, he grabbed her wrist in an attempt to take her phone. Kelley then exited the vehicle to assist his mother. Kelley courageously confronted a man four inches taller and sixty pounds heavier to protect his mother. Although Spate was thrown to the ground during the confrontation between Irby and Kelley, that fall did not cause her to break her ankle. After the confrontation, Kelley left to go get the police from the scene of the nearby auto accident.

Spate testified that she then walked away from Irby toward a sports utility vehicle parked on the street in an attempt to avoid further conflict. Tr. p. 34. Irby's neighbor testified that Irby threw Spate against the back of the nearby sports utility vehicle and then dropped her to the concrete. Tr. p. 98. Only then did Spate's ankle break in three

6

different places. When Irby committed this act, there was no threat to Irby. There is more than enough probative evidence and reasonable inferences to be drawn from that evidence to allow a trier of fact to find that the State met its burden of disproving Irby's claim of self-defense.

Affirmed.

BAKER, J., and MAY, J., concur.