## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 08 2016, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

D. Alan Ladd
Ladd and Thomas
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tristan Crayton, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | June 8, 2016 <br><br> Court of Appeals Case No. 49A02-1510-CR-1690 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Grant Hawkins, Judge <br><br> Trial Court Cause No. 49G05-1309-FC-62308 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Tristan Crayton was found guilty of criminal recklessness, a Class D felony. Crayton appeals his conviction, raising the sole issue of whether the State sufficiently rebutted his claim of self-defense. Concluding the State sufficiently rebutted his claim of self-defense to the criminal recklessness charge, we affirm.

# Facts and Procedural History

[2] After leaving an Indianapolis nightclub in the early morning hours of August 2, 2013, Matthew Williams and Andrew Allen had a verbal confrontation on Broad Ripple Avenue outside the nightclub. Crayton, who had been with Williams inside the nightclub, tried to defuse the situation. An Indianapolis Metropolitan Police Department reserve officer working security at a restaurant near the altercation told the men to break it up and move along. Williams and Crayton headed west on Broad Ripple Avenue and turned south on College Avenue. Allen, now accompanied by Raymond Williams[1] and others, followed. The group walked past a second entrance to the nightclub on College Avenue before stopping to continue their confrontation by "squaring up" as if to fight. Transcript at 291. Additional people joined the fray, and eventually a dozen or more people were in the immediate vicinity.

---

[1] Matthew Williams and Raymond Williams are not related.

[3] Samuel Wade, a manager at the nightclub, had been called to the Broad Ripple Avenue entrance of the club when the initial altercation was going on, but the men had already moved away from that entrance by the time he got there. Wade followed them around the corner to make sure they did not try to re-enter the nightclub through the College Avenue entrance. When the group continued on past the entrance, Wade paused to smoke a cigarette and check his phone.

[4] After stopping about thirty feet past the nightclub entrance on College Avenue, Williams pushed Allen and then Allen punched Williams in the face, knocking him to the ground and fracturing his orbital bone. Crayton had gone to his car, which was parked just south of the action on College Avenue, and retrieved his handgun. Within seconds of Allen punching Williams, Crayton began shooting into the assembled crowd. Witnesses testified there were at least ten shots fired. Allen was shot in the arm and leg; Raymond Williams was shot in the knee, the toe, and twice in the back; and Wade was shot in the inner thigh, above his knee, and in the foot. In addition, Gabriel Daniels, another acquaintance of Allen's, was shot in the chest, the back, and the leg.

[5] Crayton identified himself as the shooter when police arrived on the scene, and he admitted that he fired his gun several times: "first at the initial threat, initial people coming towards me . . . [a]nd then I had rotated around to the three that were on [Williams] and then I seen [sic] another figure kind of pop up close and I came back around and shot again." *Id.* at 447-48. Crayton testified about the reason he shot the gun:

> I thought literally that they were going to beat the shit out of us because I mean you got a whole football team what appears to be like rushing you and you already see your friend unconscious on the ground [and] I felt like I didn't have any options.

*Id.* at 453-54. Ten shell casings were recovered from the scene that matched the handgun retrieved from Crayton's car. No one else who was interviewed by police during the investigation had a weapon, and Crayton testified that he was never struck by anyone, he had not seen anyone with a weapon, and no one else fired a gun.

[6] A grand jury returned an indictment against Crayton in twelve counts: four counts of battery as a Class C felony, four counts of criminal recklessness as a Class C felony, and four counts of criminal recklessness as a Class D felony.[2] Crayton was tried to the bench on June 22, 2015. The parties returned to court for final arguments on July 22, 2015, at the conclusion of which the trial court found Crayton guilty of Count IX, criminal recklessness as a Class D felony for shooting Wade, and not guilty of the remaining counts. The trial court explained its ruling:

> It is clear that the State of Indiana has an obligation to overcome self-defense beyond a reasonable doubt. As to the four intentional – four allegations of intentional shooting,[3] I don't think the State has. . . . Counts Five through Eight require proof

---

[2] This equates to one count of battery, one count of Class C felony criminal recklessness, and one count of Class D felony criminal recklessness for each of the four shooting victims.

[3] The trial court is referring to Counts I through IV, battery as a Class C felony.

that the defendant recklessly shot into a sidewalk area and could have caused injuries. If you remember we had that, that one exhibit, the aerial and I tried to ask everybody to show me where they were and that sort of thing and didn't seem like a whole lot of lining up on the sidewalk area was occurring. That's an essential element of the criminal recklessness charge in those counts so there will be a finding of not guilty there.[4] The concept of criminal recklessness doesn't comfortably apply to . . . Andrew Allen and Ray Williams because I think the shooting goes to it was intentional, not reckless. I think it was done in self-defense which goes back to the finding on Counts One through Four. [Daniels] is a problem. [Wade is] a bigger problem. Daniels, however, was associated with the other two – two of the other shooting victims and I agree with both of you we have the situation where fight fight or wreck wreck or whatever and people just come running. . . . We have to look at what the defendant thought when he saw that crowd rushing towards him and his friend. You know, knowing that there is a lot of provoking going on between his friend and Allen. So I'm not, not sure where I fall on Daniels, however I am sure where I fall on Wade. The use of self-defense must be reasonable and I think [the State is] right, just shooting into a crowd is not reasonable. Now, three of the people who got shot were three folks who might have been legitimate targets of concern. Mr. Wade is, like you say, the innocent bystander. And shooting and causing his injury is, is neither self-defense nor reasonable. So as to, I believe it's Count Nine where Sam Wade is the victim . . . there will be a finding of guilty as charged. And as to Mr. Daniels, I guess because I'm not sure that, that's reasonable doubt so there will be

---

[4] Counts V through VIII alleged Crayton "did recklessly, knowingly or intentionally perform an act, that is: shooting a firearm into a place where people are likely to gather, that is: the sidewalk . . ., that created a substantial risk of bodily injury to another person . . . ." Amended Appellant's Appendix at 17.

a finding of not guilty on that count as well. So not guilty everywhere except Count Nine.

*Id*. at 511-13.

[7] One day prior to the scheduled sentencing hearing, Crayton filed a motion to reconsider the guilty verdict on Count IX. At the sentencing hearing, the trial court denied the motion, stating, "I think when you are intentionally shooting people, which is what you are doing when you invoke self defense, you are saying, I shot him and meant to shoot him. That applies to the people who are providing the threat and not to those who may have been hurt." Tr. of Sentencing Hearing at 3. The trial court then sentenced Crayton to 180 days suspended to probation, following the successful completion of which he is eligible for alternative misdemeanor sentencing. Crayton now appeals his conviction.

# Discussion and Decision

## I. Standard of Review

[8] "A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act." *Hobson v. State*, 795 N.E.2d 1118, 1121 (Ind. Ct. App. 2003), *trans. denied*. When a claim of self-defense or defense of another finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Huls v. State*, 971 N.E.2d 739, 746 (Ind. Ct. App. 2012), *trans. denied*. Our standard of reviewing a challenge to the sufficiency of

evidence to rebut a self-defense or defense of another claim is the same as the standard for any sufficiency of the evidence claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is sufficient evidence of probative value to support the trier of fact's conclusion, we will not disturb the judgment. *Id.*

[9]
> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>     (1) is justified in using deadly force; and
>     (2) does not have a duty to retreat;
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

Ind. Code § 35-41-3-2(c). In order to prevail on a claim of self-defense, the defendant must show that he (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson*, 770 N.E.2d at 800. The force used must be proportionate to the requirements of the situation confronting the defendant. *Weedman v. State*, 21 N.E.3d 873, 892 (Ind. Ct. App. 2014), *trans. denied*.

# II. Criminal Recklessness as to Wade

[10] Crayton argues the State presented insufficient evidence to rebut his claim of self-defense and defense of another and therefore the trial court erred in finding he was guilty of criminal recklessness with respect to Wade. Specifically, Crayton argues the "reasonable and justified intent to defend himself and [Williams] transferred to Wade." Corrected Amended Appellant's Brief at 19.

[11] In Indiana, the doctrine of transferred intent is applicable to a situation where a person intends to kill or injure one victim and acts toward that end, but through mistake or inadvertence, kills or injures an unintended victim. *Matthews v. State*, 866 N.E.2d 821, 825 n.3 (Ind. Ct. App. 2007), *trans. denied*. Other states recognize the doctrine of transferred intent can be applied to a self-defense claim. *See, e.g.*, *People v. Blue*, 799 N.E.2d 804, 811 (Ill. App. Ct. 2003) ("Under the doctrine of transferred intent, defendant can be exonerated if he shoots an assailant in self-defense but injures another; defendant's intent to shoot his assailant in self-defense is transferred to the unintended victim."); *State v. Zumwalt*, 973 S.W.2d 504, 506 (Mo. Ct. App. 1998) ("Missouri courts have long applied the rule that if the killing or injury of a person intended to be hit would, under all the circumstances, have been excusable or justifiable on the theory of self-defense, then the unintended killing or injury of a bystander by a random shot fired in the proper and prudent exercise of such self-defense is also excusable or justifiable."). Crayton has not directed us to any Indiana criminal case, nor has our research uncovered any, expressly holding the same.

[12] Crayton does direct our attention to *Carbo, Inc. v. Lowe*, 521 N.E.2d 977 (Ind. Ct. App. 1988), *trans. denied*. In that wrongful death case, a liquor store clerk who was stocking coolers heard a bell indicating the door had opened and returned to the store front to see two masked and armed men flanking a third unmasked man approaching the counter. The clerk reached under the counter for a revolver and the two masked men fired several shots at him, but missed. The clerk returned their fire and all the men ducked behind their respective sides of the counter. Lowe, the unmasked man, vaulted over the counter and drew a shot from the clerk. Lowe then lunged toward the clerk and the clerk fired again. Lowe fell at the clerk's feet, where he died. During this commotion, the two masked men fled the store unnoticed and were never apprehended. It turned out that Lowe had merely entered the store at the same time as the would-be robbers but was not associated with them nor was he armed. His widow brought a wrongful death action against the liquor store and store clerk, and a jury awarded her $500,000. On appeal, we reversed the jury verdict, holding the clerk's actions were justifiable under the criminal standards of self-defense:

> The three men entered together. While Lowe was not masked, was in fact unarmed and had frequented the liquor store, [the clerk] nevertheless had no certain knowledge as to whether Lowe was one of the robbers or not. Certainly he might have been.
>
> Not only were the other two men carrying guns, they opened fire. When Lowe, without explanation, vaulted over the counter, [the clerk] was entitled to believe, as he did, that he was being

> attacked in pursuance of a robbery attempt. Had he hesitated to confirm the facts, he might himself have been killed.

*Id.* at 980.

[13] We must accept that the trial court found Crayton acted in self-defense or defense of another in shooting into the crowd that had assembled around Williams and him after Williams was punched and perhaps briefly knocked out. To the extent the result in a civil tort case is applicable to this criminal case, we note that unlike the unmasked man in *Carbo*, there was not even the appearance that Wade was involved in the altercation or posed any threat to Crayton or Williams. Wade was approximately thirty feet away from the group Crayton found threatening to himself and his friend. Crayton discharged his weapon into a crowd ten times, swinging from side to side and back again. Crayton acted recklessly and disproportionately in discharging his weapon in a manner that exceeded the immediate perceived threat. *See Weedman*, 21 N.E.3d at 892; *cf. Yingst v. Pratt*, 139 Ind. App. 695, 700, 220 N.E.2d 276, 279 (1966) (holding that a business owner who was the victim of a crime "as vicious as armed robbery" was excused from liability for an injury caused to a patron when the would-be robber's gun discharged while the owner wrestled with him, but questioning whether the owner would have been excused if he had instead used a shot gun or machine gun to thwart the robber, as "the force employed must not be out of proportion to the apparent urgency of the occasion").

# Conclusion

[14] Viewing the facts in the light most favorable to the trial court's determination, there is sufficient evidence of probative value to support the trial court's conclusion that Crayton was guilty of criminal recklessness as to Wade. Crayton's conviction is affirmed.

[15] Affirmed.

Najam, J., and Crone, J., concur.