Gregory A. HARMON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 50A03–0511–CR–544.

Court of Appeals of Indiana.

June 26, 2006.

June E. Bules, Plymouth, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Mara McCabe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Gregory A. Harmon ("Harmon") appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Class B felony.[1] We reverse and remand for a new trial.

---

1. Ind.Code § 35–47–4–5(c).

## Issue

■ Harmon presents one issue for review, which we restate as whether the trial court abused its discretion by excluding self-defense evidence in the second phase of his bifurcated trial.[2]

## Facts and Procedural History

In Argos, Indiana, Audrey and John Cavinder manage a piece of property, which includes a house as well as an apartment connected to a garage. In November of 2003, Theresa Marzean rented the house and lived there with Harmon, her fiancé. Mike Palm rented the apartment and lived there with his significant other and their baby.[3]

On November 26, 2003, Harmon, who works as a truck driver, returned home and parked his semi-tractor in the driveway. At approximately 5:30 p.m., Palm came over and asked Harmon to move the semi-tractor so that Palm could park in the drive. Harmon obliged. Palm subsequently went to the Cavinder residence and spoke to Audrey, while John was upstairs. Audrey went to discuss the parking situation with Harmon and Marzean. After Audrey left, John came downstairs and learned from Palm that there was a parking issue and also that Harmon had

allegedly threatened to kill Palm and his family. John, therefore, drove himself and Palm to Marzean's house to discuss these issues with Harmon. John arrived before his wife, and a fight soon broke out involving John, Harmon, Theresa, and Palm. Audrey joined the altercation upon her arrival. At some point, Harmon entered the house, ran back outside, and got into his semi-tractor. He then jumped out and fired one shot from a handgun.

In its amended charging information, the State charged Harmon with Count I, Attempted Voluntary Manslaughter, a Class A felony;[4] Count II, Criminal Recklessness, a Class D felony;[5] Count III, Disorderly Conduct, a Class B misdemeanor;[6] and Count IV, Unlawful Possession of a Firearm by a Serious Violent Felon, a Class B felony.[7] The trial court ordered Count IV bifurcated from the other counts. The State filed a motion in limine, requesting the trial court to enter an order prohibiting Harmon from arguing self-defense as a defense to Unlawful Possession of a Firearm by a Serious Violent Felon.

On June 14, 2005, a jury trial commenced for Counts I–III. John testified that, when he arrived at Marzean's house, he walked up to the porch and, the next thing he knew, Harmon opened the door

---

2. Harmon frames the issue in terms of the trial court's granting of the State's motion in limine, but the issue is actually whether the trial court abused its discretion by excluding evidence at trial. The granting of a motion in limine does not determine the ultimate admissibility of the evidence. *Howard v. State*, 816 N.E.2d 948, 960 (Ind.Ct.App.2004), *reh'g denied*. Rather, a ruling in limine is meant to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself. *Id.* at 961. To preserve an issue for appellate review, a defendant must make an offer to prove, setting forth the grounds for admission of the evidence and the relevance of the testimony.

Ind. Evidence Rule 103(a); *West v. State*, 755 N.E.2d 173, 184 (Ind.2001). Because Harmon made an offer to prove, we proceed with the issue as restated.

3. We respectfully use the term "significant other" because the record is unclear whether Palm is married or engaged to the baby's mother.

4. Ind.Code §§ 35–41–5–1, 35–42–1–3(a).

5. Ind.Code § 35–42–2–2(b)(1)(2).

6. Ind.Code § 35–45–1–3(1).

7. Ind.Code § 35–47–4–5(c).

and put him in a headlock. Audrey and John testified that Harmon later pointed a gun at John, fired one shot, and, thereafter, John got his shotgun from his own truck.

In contrast, Harmon testified that John came running up to the porch and began beating on the glass, asking Harmon if he wanted some of John and if he had a problem. John allegedly then began poking Harmon. When Harmon finally pushed John's hand away, John lunged at him and a fight ensued. After wrestling with John, Harmon ran into the house to find "something to protect [himself] and try to break the whole mess up because Theresa was on the ground at that point with Audrey on her." Tr. at 269. While inside, he looked out a window and saw John retrieve a shotgun from John's vehicle. Consequently, Harmon went to the bedroom and obtained Theresa's gun. He then ran out to his semi-tractor to obtain a cell phone and, while inside the semi-tractor, saw John heading toward the porch pointing the shotgun at Theresa, so he jumped out and "fired a shot in the air and then ... threw the pistol to get John's attention." Tr. at 270. Marzean also testified that Harmon fired a shot to protect her from John, who was walking toward the house with his shotgun in hand.

The jury found Harmon not guilty of Count I, Attempted Voluntary Manslaughter and Count II, Criminal Recklessness, but guilty of Count III, Disorderly Conduct. At the end of the first phase of trial, the court heard arguments on the State's motion in limine and concluded that the crime of unlawful possession of a firearm by a serious violent felon is properly viewed "more as like [a] status offense almost...." Appellant's App. at 37; Tr. at

317. The trial court granted the State's motion in limine, thereby precluding Harmon from presenting any self-defense evidence. The jury convicted Harmon of Count IV, Unlawful Possession of a Firearm by a Serious Violent Felon. He now appeals.

**Discussion and Decision**

*Standard of Review*

■ The thrust of Harmon's argument on appeal is that the trial court abused its discretion by excluding evidence of self-defense.[8] The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only where the trial court abuses its discretion. *Howard v. State*, 816 N.E.2d 948, 961 (Ind.Ct.App. 2004), *reh'g denied.*

*Analysis*

*I. Exclusion of Self-Defense Evidence*

■ A valid claim of self-defense is a legal justification for an act that is otherwise defined as "criminal." Ind.Code § 35–41–3–2(a); *see also Pinkston v. State*, 821 N.E.2d 830, 842 (Ind.Ct.App.2004), *trans. denied.* To prevail on such a claim, the defendant must show that he or she: (1) was in a place where the defendant had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Pinkston*, 821 N.E.2d at 842. An individual is justified in using deadly force only if he or she "reasonably believes that that force is necessary to prevent serious bodily injury to [the individual] or a third person." I.C. § 35–41–3–2(a). The amount of force that an individual may use to protect himself or herself must be proportionate to the ur-

---

8. Indiana Code Section 35–47–4–5(c) prohibits a serious violent felon from knowingly or intentionally possessing a firearm. Harmon does not contest that he is a serious violent felon, nor does he dispute that he knowingly or intentionally possessed a firearm.

gency of the situation. *Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind.Ct.App.1999). When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished. *Id.*

When a defendant asserts a claim of self-defense, as Harmon attempted to do during phase two of his bifurcated trial, any evidence legitimately tending to support his theory is admissible. *See Brand v. State*, 766 N.E.2d 772, 780, 781 (Ind.Ct.App.2002), *trans. denied.* Indeed, a defendant is denied the right to exercise reasonable force in response to an attack when he or she is not permitted to present evidence relevant to a claim of self-defense. *Id.* at 781. Such evidence must imply a propensity for violence on the part of the victim. Id. at 780. While the victim's threats or violence need not be directed toward the defendant, the latter must have knowledge of these matters at the time of the confrontation between the victim and the defendant. *See id.* A defendant's belief of apparent danger does not require the danger to be actual danger, but the belief must be in good faith. *Id.* at 781. The question of the existence of such danger, the necessity or apparent necessity, and the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the then existing circumstances. *Id.* Focusing on the "standpoint of the defendant" means at least two things: (1) the trier of fact must consider the circumstances only as they appeared to the defendant; and (2) the defendant's own account of the event, although not required to be believed, is critically relevant testimony. *Id.*

In *Brand*, the defendant (Brand) fatally shot someone during a fight and, at trial, argued that he reasonably believed deadly force was necessary to protect himself.

*Id.* at 777. Although the trial court permitted Brand to testify as to the events and his general fear and apprehension, it refused to admit evidence of prior events and facts that formed the basis for Brand's reasonable fear. *Id.* On appeal, Brand argued that such evidence should have been admitted, and a panel of this Court agreed. *Id.* at 778. Brand's proffered evidence demonstrated that the victim sold drugs, was a gang member, and had previously offered to sell Brand a firearm. *Id.* at 780. This, we concluded, implied that the victim had access to a firearm and was inclined toward violent behavior. *Id.* Further, it related to the victim, and the record suggested that Brand had knowledge of these matters before the fatal shooting. *Id.* This evidence, in addition to evidence of the victim's aggression (i.e., during the fight), satisfied the foundational requirements for the admission of evidence to permit an inference that Brand's fear was reasonable. *Id.* at 781. We also concluded that the offered evidence highlighted Brand's thought processes during the fatal event and was relevant regardless of whether Brand was in actual danger, especially since the jury was required to examine the self-defense claim from Brand's perspective. *Id.* We held that "[t]he jury should have been afforded the opportunity to consider the circumstances surrounding the fatal shooting as they appeared to Brand." *Id.*

Here, Harmon's offered evidence was similar to his testimony during phase one of trial, where he testified that he had obtained Theresa's gun because he first saw John retrieve a shotgun from John's truck. Harmon's proffered evidence revealed that he had been attacked on his property and that he was in fear for himself and Theresa. Considering these circumstances only as they appeared to Harmon, these facts highlight Harmon's

thought processes during the event and are relevant regardless of whether Harmon was in actual danger from John. *See Brand,* 766 N.E.2d at 781. The fight evidence implies a propensity for violence on the part of John, and Harmon knew about these matters because he was personally involved in the entire altercation. Therefore, a jury could conclude that Harmon's fear or apprehension was reasonable.

■ Nevertheless, the trial court excluded Harmon's self-defense evidence, equating the offense of possessing a firearm by a serious violent felon to that of a status offense for which the defense is inapplicable. We disagree. First, the offense at issue is not a status offense inasmuch as Harmon's status as a serious violent offender, by itself, did not provide the basis for his prosecution. *See, e.g., Baker v. State,* 747 N.E.2d 633, 636 (Ind.Ct.App. 2001) (noting that an individual may not be prosecuted for mere status), *trans. denied.* Rather, Harmon's serious violent felon status constituted one element of the offense charged. The State was still required to prove that Harmon possessed the firearm in question.

Second, we do not believe that the Indiana Legislature, in prohibiting the possession of a firearm by a serious violent felon, intended to preclude the assertion of self-defense. Several jurisdictions have enacted penal statutes prohibiting persons under indictment for, or convicted of, a crime, generally a felony, from acquiring, having, carrying, or using firearms or weapons. *See, e.g.,* Sara L. Johnson, 39 A.L.R.4th 967 (1985). The courts in these jurisdictions have reached contrary results in determining whether the fact that the weapon was acquired for self-defense is available as a defense in a prosecution for a violation of these penal statutes. Some courts have adopted the view that even if a weapon was acquired for self-defense, or to prevent its use against the defendant, self defense is not available as a defense because the statutes at issue did not expressly make an exception for a convicted felon who believed he or she may need a firearm for defensive purposes. *See, e.g., id.* (citing *Hodges v. State,* 45 Ala.App. 29, 221 So.2d 922, 923 (1969), *cert. denied; Thorpe v. State,* 377 So.2d 221 (Fla.Ct.App.1979)).

Other courts, however, have recognized self-defense as a viable defense, provided that the particular circumstances warranted such defense. In *People v. King,* 22 Cal.3d 12, 148 Cal.Rptr. 409, 414, 582 P.2d 1000, 1005 (1978), for example, the court held that the legislature, in prohibiting the possession of a concealable firearm by a person previously convicted of a felony, did not intend to preclude the assertion of self-defense and closely related defenses to a charge of violating the statute. There, the defendant had been attending a party at a friend's house when the house came under attack from some uninvited and intoxicated individuals. *Id.* at 411, 148 Cal.Rptr. 409, 582 P.2d at 1002. During the melee, the defendant was given a small pistol from another guest to use in protecting the house and the occupants. He fired the gun over the heads of the attackers, slightly wounding one and frightening away the remainder. At trial, the judge refused to give an instruction that self-defense would be a defense to the weapon-possession charge and the defendant appealed. On review, the *King* Court determined that the prohibition of a felon possessing a firearm was not intended to affect a felon's right to use a concealable firearm in self-defense, but was intended only to prohibit members of the affected classes from arming themselves with concealable firearms or having such weapons in their custody or control in circumstances other than those in which the right to use deadly force in self-defense exists or reasonably appears

to exists. *Id.* at 416, 148 Cal.Rptr. 409, 582 P.2d at 1007. Thus, continued the court, when a felon, like the defendant in question, is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, and without preconceived design on his part a firearm is made available to him, his temporary possession of that weapon for a period no longer than that in which the necessity or apparent necessity to use it in self-defense continued would not violate the statutory prohibition against possession of a concealed firearm by a felon. *Id.*

Indiana, like other states, has enacted criminal statutes prohibiting persons from carrying handguns without licenses, i.e., Indiana Code Section 35–47–2–1, and forbidding serious violent felons from knowingly or intentionally possessing firearms, i.e., Indiana Code Section 35–47–4–5. These statutes, however, are silent on the issue of self-defense. Cf. Ind.Code § 35–47–4–3.[9] What is more, we have found no Indiana case that expressly applies, or refuses to apply, self-defense to an offense under Indiana Code Section 35–47–4–5.

In *Johnson v. State*, 256 Ind. 497, 506–07, 269 N.E.2d 879, 884 (1971), our Supreme Court considered whether the trial court had properly refused to give the defendant's proffered self-defense instruction to the offense of carrying a pistol without a license.[10] The tendered instruction provided:

> If you find that the defendant was carrying a pistol in a vehicle, even unlawfully, and that he commenced to carry said pistol on his person upon alighting from his vehicle, and that he was carrying said pistol on his person at that time for the sole purpose of defending himself against an attack that reasonably appeared to him likely to occur at that time and place, then his act of carrying the pistol on his person, would be justified by the law of self-defense and he would be entitled to an acquittal.

*Id.* at 506, 269 N.E.2d at 883–884.

In finding no error, the *Johnson* Court first noted that the evidence did not support the instruction because "there was no evidence that the pistol was ever in the vehicle other than on the person of the appellant." *Id.* at 506, 269 N.E.2d at 884. The Court also observed:

> The instruction is further in error in that it presumes that even though [the defendant] was carrying the pistol in the vehicle unlawfully that his possession suddenly became lawful when he became apprehensive of personal attack. This is not the law. *Had the pistol been in a location which was lawful, and the appellant obtained it from such position to defend himself, we might have a legitimate question.* But where the appel-

---

9. Indiana Code Section 35–47–4–3 provides:

 (a) This section does not apply to ... a person who is justified in using reasonable force against another person under:
 (1) IC 35–41–3–2; or
 (2) IC 35–41–3–3.
 (b) A person who knowingly or intentionally points a firearm at another person commits a Class D felony. However, the offense is a Class A misdemeanor if the firearm was not loaded.

10. In 1971, Indiana Code Section 35–23–4–3 provided: "No person shall carry a pistol in any vehicle or on or about his person, except in his place of abode or fixed place of business, without a license thereof as hereinafter provided." This statute has been recodified in Indiana Code Section 35–47–2–1(a), which provides:

 Except as provided in subsection (b) and section 2 of this chapter, a person shall not carry a handgun in any vehicle or on or about the person's body, except in the person's dwelling, on the person's property or fixed place of business, without a license issued under this chapter being in the person's possession.

lant's apprehension could only cause him to shift the pistol from one unlawful location to another, he cannot be heard to say that his possession suddenly became lawful. [Indiana Code Section 35–23–4–3 (1971) ] makes no exception for a person to carry a weapon for the purpose of self-defense. The appellant's possession of the weapon either in his automobile or on his person for the purpose of self-defense was not a defense available to appellant in this case.

*Id.* at 506–07, 269 N.E.2d at 884 (citations omitted and emphasis added).

 Here, unlike in *Johnson*, there is a legitimate question regarding Harmon's claim of self-defense. Harmon's proffered evidence reveals, for example, that he broke into the locked gun case and obtained Theresa's handgun only after he saw John retrieve a shotgun from John's truck. These events occurred in the middle of a heated altercation between Harmon and Theresa, on the one hand, and John, Audrey, and Palm, on the other. According to Harmon, when he first took possession of the firearm, he was outnumbered, concerned about John's intention with the shotgun, and believed himself and Theresa to be in imminent peril of great bodily harm. Further, Harmon's possession of the firearm was temporary and lasted only for the period of time necessary to abate the danger. Under these circumstances, we conclude, as did the *King* majority and as was suggested by our Supreme Court in *Johnson*, that Indiana's prohibition against a felon possessing a firearm was not intended to affect his or her right to use a firearm in self-defense, but was intended only to prohibit members of the affected classes from arming themselves with firearms or having such weapons in their custody or control in circumstances other than those in which the right to use deadly force in self-de-

fense exists or reasonably appears to exists. *Id.*

Because the evidence legitimately tends to support Harmon's self-defense theory, it is admissible and the jury should have had the opportunity to consider the circumstances as they appeared to Harmon. *See id.* 766 N.E.2d at 780, 781. Accordingly, we hold that the trial court abused its discretion by excluding this self-defense evidence to the charge of unlawful possession of a firearm by a serious violent felon.

## II. Harmless Error

 Our inquiry does not end here. We will find harmless an error in the exclusion of evidence if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights. Ind. Trial Rule 61.

In the case at bar, Harmon did not contest the elements of unlawful possession of a firearm by a serious violent felon. Rather, he wished to argue that his possession was legally justified in self-defense. As discussed, he had a right to do this, and because the jury was unable to consider his defense, it had little choice but to convict Harmon. Additionally, it is important to recognize that, after hearing evidence similar to that which was excluded during phase two, the jury found Harmon not guilty of Attempted Voluntary Manslaughter and Criminal Recklessness. If the jury believed, as one would infer from its findings, that self-defense justified Harmon's use of force by means of the gun, the jury may have also found Harmon not guilty of possessing the gun had it been allowed to consider self-defense as a justification for that possession. In light of all of the evidence in the case, we cannot say that the impact on the jury of the exclusion of evidence was sufficiently minor so as not to affect Harmon's substantial rights. The trial court's error was not harmless.

## III. Sufficiency of Evidence for Retrial

 Having determined that the trial court committed reversible error by excluding self-defense evidence, the question of whether Harmon may be subjected to a new trial depends upon an analysis of the sufficiency of the evidence. *Alexander v. State*, 819 N.E.2d 533, 539 (Ind.Ct.App. 2004). When deciding whether retrial is permissible, we consider all of the evidence admitted by the trial court, including any erroneously admitted evidence. *Id.* at 539–40. If that evidence, viewed as a whole, would have been sufficient to sustain the judgment, retrial would not offend double jeopardy principles. *Id.* at 540. If, however, the evidence is insufficient, Harmon may not be retried. *See id.*

When considering a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *Id.* Considering only the evidence and reasonable inferences that support the verdict, we must decide if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Id.*

Here, Harmon admitted to being a serious violent felon and to knowingly or intentionally possessing a firearm. Thus, there is sufficient evidence to sustain the judgment. Retrial would not offend double jeopardy principles.

### Conclusion

The trial court abused its discretion by excluding self-defense evidence in the second phase of Harmon's bifurcated trial. Such error was not harmless. Retrial would not offend double jeopardy principles.

Reversed and remanded for a new trial.

KIRSCH, C.J., and CRONE, J., concur.