**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MALINDA DIAZ, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A02-1109-CR-821 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Clark Rogers, Judge
Cause No. 49G17-0912-FD-98552

**March 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Malinda Diaz appeals her conviction for domestic battery as a class A misdemeanor.[1] Diaz raises one issue, which we revise and restate as whether the evidence is sufficient to sustain her conviction. We affirm.

The facts most favorable to Diaz's conviction follow. Diaz and her former husband, Roberto, were married from April 2001 to June 2009, Diaz has custody of their two children, and Roberto has visitation with them every other weekend. In October 2009, Roberto was dating Heidi, and he later married her.

On October 23, 2009, Roberto went to Rascal's Fun Zone to pick up his children from Diaz. On his way, Roberto took Heidi to the Greenwood Mall "[f]or Heidi's safety." Transcript at 8. Roberto picked up the children at Rascal's Fun Zone, and as he left with the children he noticed that Diaz was following him in her vehicle. Roberto pulled into a CVS so that Diaz would pass him. Roberto then drove to the mall to pick up Heidi, and then Roberto, Heidi, and Roberto's two children went to a Mexican restaurant named El Paso.

As Roberto was placing his order at El Paso, he noticed Diaz's vehicle pull into the parking lot of the restaurant, and Heidi, concerned for her safety, went into the men's restroom to hide. Diaz entered the restaurant and stated "where's that f------ b----? Where is she hiding?" Id. at 11. In an effort to leave the restaurant with the children, Diaz "grab[bed] the kids by their arm[s]" and "drag[ged] them." Id. at 12. Roberto followed Diaz and the children to the door of the restaurant and told Diaz that he was

---

[1] Ind. Code § 35-42-2-1.3 (Supp. 2006).

going to call the police. At that point, Diaz "kicked [Roberto] in the groin," and Roberto fell to the ground. Id. at 13. Diaz had recently had a vasectomy and was "still very, very tender." Id. Diaz opened the door to her vehicle, "[t]hr[e]w the kids in the van, without seat belts," and "[j]umped in the driver's side and t[ook] off." Id.

Roberto called the police, and Indianapolis Metropolitan Police Officer Joshua Kemmerling arrived at the scene a few minutes later. After Roberto explained the situation to Officer Kemmerling, Roberto called Diaz "to tell her to come back and bring [the] kids." Id. at 15. At some point, Roberto handed the phone to Officer Kemmerling who then spoke with Diaz. Officer Kemmerling identified himself and asked Diaz to return to the scene, and Diaz was "very threatening and yelling and it took [Officer Kemmerling] some time to even be able to speak so she would listen because she was so busy yelling at [him and] could not hear anything that [he] had to say." Id. at 47. Diaz eventually returned to the restaurant "at a very high rate of speed" and came "to a very unsafe and fast stop in the area of" Roberto and Officer Kemmerling. Id. at 48. Diaz exited her vehicle and "started yelling" at Roberto and the officer. Id. at 17.

Officer Kemmerling eventually obtained a statement from Diaz and at some point advised Roberto that he could retrieve his children from Diaz's vehicle and leave. Roberto, Heidi, and the children entered Roberto's vehicle and drove away from the restaurant. As Roberto began to leave and while Officer Kemmerling was still standing nearby, Diaz "jumped" in her vehicle and "took off at a high rate of speed toward [Roberto's] vehicle . . . [a]s if she was chasing him." Id. at 53. Officer Kemmerling entered his police vehicle, pulled up behind Diaz's vehicle, and activated his lights and

siren "a couple short times to stop her vehicle." Id. at 54. Officer Kemmerling approached Diaz and advised her that "she can't be following them," and Diaz "was yelling at [Officer Kemmerling] again" and was "[s]till very threatening and volatile." Id.

On December 8, 2009, the State charged Diaz with: Count I, domestic battery (child present) as a class D felony; Count II, battery (family or household member) as a class D felony; Count III, domestic battery as a class A misdemeanor; Count IV, battery as a class A misdemeanor; and Count V, interference with reporting a crime as a class A misdemeanor. On February 3, 2010, the State filed a motion to amend the information by adding Counts VI and VII for battery as class B misdemeanors, and the court granted the motion. On August 10, 2011, on the day of Diaz's bench trial, the State filed a motion to dismiss Counts I, II, V, VI, and VII, and the court granted the motion.

At trial, the court heard the testimony of Diaz, Roberto, Heidi, Officer Kemmerling, and Charlene Haggard, who had been employed at a store located near El Paso and witnessed the scene outside El Paso. Diaz testified that Roberto had invited her to El Paso so they could talk about a bankruptcy and child support payment. Diaz further testified that, when she arrived at the restaurant, she learned that Heidi was hiding in the restroom and "said kids let's go" and "said [Roberto] agreed that [Heidi] would not be here" because "the agreement was Heidi would not be around" as one of the children "did not want to go see Heidi." Id. at 67-68. Diaz testified that she, Roberto, and the children exited the restaurant and were standing in between two cars when Roberto started to call the police. Diaz testified that she and Roberto "started struggling over his telephone and

4

[she] knocked it to the ground," that when she went to pick up the phone Roberto "knocked [her] to the ground all the way and [she] hit [her] finger," and that when she "was standing back up, he started twisting both [her] arms" and demanding his phone. Id. at 68-69. Diaz testified that Roberto pushed her back into the restaurant and that Roberto "wouldn't let go of [her] arms so [she] kneed him in the private spot." Id. at 69. Diaz testified: "Roberto touched me first." Id. at 70.

Roberto testified regarding the events of October 23, 2009, and indicated that he did not inform Diaz that he planned to go to El Paso and did not invite her to attend. Heidi testified that Roberto dropped her off at the mall "[b]ecause [she] wasn't allowed to ride with him to go get the kids," according to Diaz. Id. at 34. Heidi also testified that she hid in the men's restroom at El Paso because she "thought that it would bide [her] more time in the event that [Diaz] did find [her]." Id. at 36.

Officer Kemmerling testified that, when he attempted to obtain a statement from Diaz, she "changed her story multiple times" and at one point stated that Roberto had hit her. Id. at 57. In addition, Haggard testified that she did not know Diaz or Roberto personally and described her observations of Diaz and Roberto in the parking lot of the restaurant. Haggard testified that Diaz was "yelling and screaming and very erratic" and that Roberto was "worried about what was going on, but calm." Id. at 28. Haggard further testified that she observed Diaz kick Roberto on his leg and grab the children "very aggressively by their upper arms and jerk[] them toward the vehicle." Id. at 27. Haggard indicated that she did not see Roberto touch or yell at Diaz.

5

The court found Diaz guilty on Count III, domestic battery as a class A misdemeanor, and not guilty on Count IV.[2] The court sentenced Diaz to ninety days with eight-six days suspended to probation.

The issue is whether the evidence is sufficient to sustain Diaz's conviction for domestic battery as a class A misdemeanor under Count III. The offense of domestic battery as a class A misdemeanor is governed by Ind. Code § 35-42-2-1.3(a), which provides as follows:

> A person who knowingly or intentionally touches an individual who:
>
> > (1)    is or was a spouse of the other person;
> >
> > (2)    is or was living as if a spouse of the other person as provided in subsection (c); or
> >
> > (3)    has a child in common with the other person;
>
> in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

In its charging information for Count III, the State alleged that Diaz "did knowingly in a rude, insolent or angry manner touch, Roberto Diaz, another person, who is or was the spouse of the Defendant, . . . and further that said touching resulted in bodily injury to the other person, specifically pain." Appellant's Appendix at 25.

Diaz argues that the evidence is insufficient to sustain her conviction and that the evidence supports a finding that she acted in self-defense. Diaz argues that "she did not instigate the physical interaction between the parties that day" and that "it was [Roberto]

---

[2] The court found Diaz not guilty on Count IV on double jeopardy grounds.

who first became physical with her when she attempted to take the children from the restaurant." Appellant's Brief at 11. Diaz "contends that she was threatened by [Roberto's] actions and had a reasonable good faith belief that her physical safety was in danger," that "[h]er actions were intended only to defend [her]self from her aggressor," and that "[t]hese facts support her claim of self-defense as they give rise to the inference that [Roberto] was not a victim, but from [Diaz's] perspective the aggressor from whom she had to defend herself from physical harm." Id. at 12.

When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Id.

To the extent that Diaz argues that she acted in self-defense, we observe that self-defense is governed by Ind. Code § 35-41-3-2. A valid claim of self-defense is legal justification for an otherwise criminal act. Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002). In order to prevail on a self-defense claim, a defendant must demonstrate she was in a place she had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. Id. The amount of

7

force a person may use to protect herself depends on the urgency of the situation. Harmon v. State, 849 N.E.2d 726, 730-731 (Ind. Ct. App. 2006). However, if a person uses "more force than is reasonably necessary under the circumstances," her self-defense claim will fail. Id. at 731; see also Hollowell v. State, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999) ("Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator.").

When a defendant claims self-defense, the State has the burden of disproving at least one of the elements beyond a reasonable doubt. Wilson, 770 N.E.2d at 800. If a defendant is convicted despite her claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. Id. at 800-801. A mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. Id. at 801 (citing Ind. Code § 35-41-3-2(e)(3) ("[A] person is not justified in using force if . . . the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.")). The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. Id. We neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. Id.

8

Diaz asserts that she was not the first aggressor and that her physical safety was in danger. Diaz's argument is an invitation to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. See Drane, 867 N.E.2d at 146; Wilson, 770 N.E.2d at 801. The facts most favorable to the conviction reveal that Diaz entered El Paso and "grab[bed] the kids" by their arms and attempted to "drag them" out of the restaurant. See Transcript at 12. Roberto followed Diaz and the children to the door of the restaurant and told Diaz that he was going to call the police, at which point Diaz "kicked [Roberto] in the groin" and Roberto fell to the ground in pain. Id. at 13.

Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Diaz did not validly act in self-defense and that she was guilty of domestic battery as a class A misdemeanor. See Bover v. State, 883 N.E.2d 158, 164 (Ind. Ct. App. 2008) (holding that the evidence was sufficient to convict the defendant of domestic battery as a class A misdemeanor and to negate the defendant's claim of self-defense); Hobson v. State, 795 N.E.2d 1118, 1121-1122 (Ind. Ct. App. 2003) (concluding that the State presented sufficient evidence to rebut the defendant's self-defense claim, even though the victim was the initial aggressor, where the defendant chose to fight back, and that the defendant's arguments to the contrary amounted to an invitation to reweigh the evidence and the credibility of witnesses), trans. denied; Rodriguez v. State, 714 N.E.2d 667, 670-671 (Ind. Ct. App. 1999) (holding that sufficient evidence existed to rebut the defendant's claim of self-defense), trans. denied.

For the foregoing reasons, we affirm Diaz's conviction for domestic battery as a class A misdemeanor.

Affirmed.

MAY, J., and CRONE, J., concur.