## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2017, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Karen Bush,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | March 30, 2017<br><br>Court of Appeals Case No.<br>49A02-1611-CR-2512<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David Hooper, Magistrate<br><br>Trial Court Cause No.<br>49G08-1606-CM-022454 |

**Brown, Judge.**

[1] Karen Bush appeals her conviction for battery as a class A misdemeanor. Bush raises one issue which we revise and restate as whether the evidence is sufficient to sustain her conviction. We affirm.

## Facts and Procedural History

[2] The facts favorable to the conviction are that, on June 10, 2016, Pamela Trammell and Bush had a physical altercation in Indianapolis outside of the house where Bush resided. At some point, Trammell's cousin Michelle Clifton arrived, and someone called the police. Indianapolis Metropolitan Police Officer Brett Lorah arrived at the scene, separated everyone, and told them to stay separated.

[3] Approximately two hours later, Bush, Bush's cousin Stephon Jake, and several other individuals walked near where Trammell and Clifton were located. Clifton and Jake argued, and Bush approached and sprayed Clifton in the eyes with mace three times, and the mace struck other individuals in the area as well. Clifton was not holding any weapon when Bush sprayed her with mace. Clifton called the police and rinsed her eyes. Officer Lorah responded to the scene and could smell mace in the air.

[4] On June 11, 2016, the State charged Bush with battery resulting in bodily injury as a class A misdemeanor. At Bush's bench trial, the court heard testimony from Clifton, Trammell, Officer Lorah, Jake, and Bush. Clifton testified that she had her car keys in her hand at the time Bush sprayed her with mace. Trammell testified that at some point Clifton had some keys but did not have

anything in her hand at the time of the altercation. Officer Lorah testified that Clifton told him that she had been in an argument with Jake and that Bush came by and maced her and others in the crowd. He testified that Bush told him that Clifton had pulled a knife on Jake and that "then she went down there and sprayed mace in self-defense more or less." Transcript at 27. Officer Lorah went back to ask further questions of Clifton to see if there was a knife involved, and Clifton told him there was no knife. She was holding a purse at the time, opened the purse and showed the officer, and told him that he could search her purse. Officer Lorah testified he searched Clifton's purse and there was no weapon in it.

[5] Jake testified that she and Clifton started to argue, Clifton "came toward and I pushed to get her away from me," Clifton pulled out a straight razor and was trying to cut her with it, and "that's when [Bush] maced her with the mace because she had the razor in her hands." *Id.* at 34-35. On cross-examination, Jake indicated that she told an officer that Clifton had a knife. Bush testified that, approximately two hours after the first altercation, she received a call from a person who stated "come down here and get your grand-daughter and your cousin" and "[t]hey getting ready to fight, ole' girl got a knife." *Id.* at 39. Bush testified that, when she arrived at the corner, there were "like fifty something people," Clifton had a knife in her hand, and Bush told Jake to come with her. *Id.* at 40. Bush testified, "while we going up the street, [Clifton] started coming at us with the knife," "I sprayed the mace to keep anything from happening," "I sprayed the mace at [Clifton] with the knife," and "if anybody else got maced it

wasn't attempt and nobody get mad." *Id.* at 41. Bush testified Clifton had a little silver knife and a purse with her, and that, after she maced Clifton, she went up the street and Clifton followed her halfway up the street, "still chasing [her] with the knife." *Id.* at 42.

[6] The State called Officer Lorah again for rebuttal, and Officer Lorah testified that Jake told him that she had been arguing with Clifton, it began to escalate and she pushed Clifton, and that is when Bush arrived. Officer Lorah testified "[t]hat was the initial incident, her story had changed a couple of times but the part with the knife – she said that after she had pushed Ms. Clifton, Ms. Clifton had pulled out a knife. She didn't do anything with the knife other than hold it." *Id.* at 46. He indicated that Jake did not tell him anything about Clifton running after or lunging at anybody with a knife. He further testified that Bush told him she received a phone call saying that Jake and Clifton were about to fight, that Bush went down to the intersection and saw Clifton with a knife, that Bush sprayed Clifton with the mace, and that Bush did not report that Clifton had followed her. When asked whether Bush and Jake reported that a knife was involved, Officer Lorah responded affirmatively, and when asked "[t]hat was the consistent story between [Bush] and Ms. Jake, correct," he replied: "At first with Ms. Jake's statement there was no knife involved. That's why I was saying inconsistent. Then when I had talked to her again, she had said that after – even though we separated the witnesses, Ms. Bush was yelling across the street telling her about the knife if you want me to be exact about that." *Id.* at 47. The court asked if Jake used the word "knife and not razor," and Officer

Lorah replied affirmatively, and the court asked if the word razor was ever used that day, and Officer Lorah answered "No, Your Honor." *Id.* at 48.

[7] Following closing arguments, the court found "I have my doubts that there was a knife. I have my doubts that there was even a razor. I find Bush used forced [sic] to try and calm an escalating situation and there was yelling, and there was [sic] words exchanged. But there was nothing that . . . would have the law allow her to mace anyone even if the situation was escalating." *Id.* at 53. The court found Bush guilty as charged and sentenced her to one year with 359 days suspended.[1]

## *Discussion*

[8] The issue is whether the evidence is sufficient to support Bush's conviction for battery and negate her claim of self-defense. Ind. Code § 35-42-2-1 governs the offense of battery and, at the time of the offense, provided that "a person who knowingly or intentionally: (1) touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor." Ind. Code § 35-42-2-1 (subsequently amended by Pub. L. No. 65-2016, § 33 (eff. Jul. 1, 2016)). The offense is a class A misdemeanor if it results in bodily injury to any other person. *Id.* The State alleged that Bush "did knowingly touch Michelle Clifton in a rude, insolent, or angry manner, to-wit: she sprayed her with mace,

---

[1] The sentencing order indicates the number of actual days Bush was confined was three days and also that she had earned credit days of three days.

resulting in bodily injury to the other person, specifically pain." Appellant's Appendix at 14.

[9] Bush argues that her use of mace was necessary to protect herself and Jake from the harm that could have been caused by Clifton's attack and that she defended herself and others in self-defense. She states that, when she arrived, Clifton was already in the crowd escalating the situation; she observed a knife in Clifton's hand; Clifton kept coming towards her with a knife; and she believed she had no choice but to spray the mace at Clifton to protect herself and others. She further notes Jake's testimony that Clifton was holding a razor and argues "[r]egardless of what [Clifton] was holding whether a knife, a razor or a house key, if a person was holding something looked like a weapon and threatened with the weapon, a reasonable person under the circumstances would have done something to protect himself/herself from the harm that the weapon might have caused." Appellant's Brief at 11.

[10] The State argues "Jake testified that while Clifton was engaged in conversation with Jake—and not even speaking with [Bush]—Clifton was pushed by Jake" and Bush "then approached Clifton and sprayed mace in her face causing pain." Appellee's Brief at 8. It asserts that no evidence was introduced that Clifton threatened, lunged at, struck, or otherwise attacked Bush, and thus it is not possible that Clifton placed Bush in fear of bodily harm. It further contends that Bush had no reason to fear that Jake or anyone else was in imminent danger of bodily harm from Clifton, Clifton had not threatened Jake and in fact according to Jake's testimony had just been pushed by Jake, and Bush

"approached and maced Clifton as her conversation with Jake continued, which was an unwarranted, excessive use of force that took place when [Bush] had no reasonable fear of death or bodily harm to herself or others." *Id.* The State contends the trier of fact is entitled to determine which version of the incident to credit and Bush's argument is a request to reweigh the evidence and reassess the credibility of the witnesses.

[11] "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). A valid claim of self-defense is legal justification for an otherwise criminal act. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). In order to prevail on a self-defense claim, a defendant must demonstrate she was in a place she had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. *Id.* The amount of force a person may use to protect herself depends on the urgency of the situation. *Harmon v. State*, 849 N.E.2d 726, 730-731 (Ind. Ct. App. 2006). When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished. *Id.* at 731.

[12] When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Wilson*, 770 N.E.2d at 800. If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Id.* at 800-801. A mutual

combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. *Id*. at 801; *see* Ind. Code § 35-41-3-2(g) (providing "a person is not justified in using force if . . . the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action"). The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson*, 770 N.E.2d at 801. We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id*.

[13] The trial court heard testimony from Clifton, Trammell, Officer Lorah, Jake, and Bush. We are mindful that the trier of fact is entitled to determine which version of the incident to credit. *Barton v. State*, 490 N.E.2d 317, 318 (Ind. 1986), *reh'g denied*; *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App. 2007) *trans. denied*. The court as the trier of fact was able to consider the extent to which the testimony of each witness was consistent or inconsistent with the testimony of the other witnesses and was able to assess the demeanor and credibility of the witnesses and weigh their testimony. The court also heard arguments by the prosecutor and defense counsel regarding the testimony related to Bush's claim of self-defense. We will not reweigh the evidence or judge the credibility of witnesses. *See Wilson*, 770 N.E.2d at 801.

Based upon the evidence, the court as the trier of fact could infer that Bush participated willingly in the violence, that she did not have a reasonable fear of great bodily harm, or that the amount of force she used was unreasonable under the circumstances. We conclude based upon the record that the State presented evidence of a probative nature from which a reasonable trier of fact could have determined beyond a reasonable doubt that Bush did not validly act in self-defense and that she was guilty of battery as a class A misdemeanor. *See Rodriguez v. State*, 714 N.E.2d 667, 670-671 (Ind. Ct. App. 1999) (noting that the defendant's version of events differed from other testimony, declining to reweigh the evidence, and holding that sufficient evidence existed to rebut the defendant's claim of self-defense), *trans. denied*.

## *Conclusion*

For the foregoing reasons, we affirm Bush's conviction for battery as a class A misdemeanor.

Affirmed.

May, J., and Pyle, J., concur.