## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 30 2017, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Derrick Townes,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

May 30, 2017

Court of Appeals Case No.
49A04-1611-CR-2651

Appeal from the Marion Superior Court

The Honorable Peggy Hart, Magistrate

Trial Court Cause No.
49G10-1606-CM-21024

**Brown, Judge.**

[1] Derrick Townes appeals his conviction for battery as a class B misdemeanor. He raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction and negate his claim of self-defense. We affirm.

## Facts and Procedural History

[2] Townes rented a house in Indianapolis from Martin Tomey, who lived across the street. On May 31, 2016, Tomey was at Townes's residence addressing issues including ants in the mailbox and mowing the grass. Townes arrived home, pulled into his driveway, and went inside the house. Tomey walked up to the house, knocked on the door, and Townes came outside. Tomey told him that he sprayed the mailbox for ants and put the first coat of paint on for the numbers on the mailbox. Tomey said: "I fixed the mail box and sprayed the mailbox but it is not my obligation because it is federal and I don't have any control over their ants being in the mailbox." Transcript at 10. Townes became irritated, and his girlfriend told him to go in the house. Townes asked Tomey to leave his property. Thirty or forty-five seconds later, Townes called Tomey "the 'N' word" and then shoved him or punched him in the chest, and Tomey went down three steps. *Id.* at 25. Tomey "turned and went for the fence, when [Townes] shoved [him] a second time at the fence," which consisted of "[j]ust a push from the back." *Id.* at 10, 20. Townes said he was calling the police, and Tomey "walked away and went over to this side to finish up [his] work." *Id.* at 11.

[3] Indianapolis Metropolitan Police Officer Donald Meier responded to the scene and first spoke with Townes, who was upset. Townes told him that Tomey had been coming over to the property at different times and harassing him over "different things like rent." *Id.* at 28. Townes told Officer Meier that he and Tomey had a heated argument over the repairs. Townes also stated: "I did lose my cool, and I pushed him to get him off my property." *Id.* at 28. Officer Meier then spoke with Tomey who told him that "he turned to walk away and he got pushed." *Id.* at 29.

[4] On June 1, 2016, the State charged Townes with battery resulting in bodily injury as a class A misdemeanor. On November 7, 2016, the court held a bench trial. Tomey and Officer Meier testified to the foregoing. When asked what kind of motion it was when Townes put his hand on him, Tomey answered:

> Uh, it was – it was quick because it was coming at – as he was coming towards me, I was heading backwards off the step because I was kind of like on one (1) step and the second step. And, I, uh, I just don't remember. I didn't initiate this. He is the one (1) that called the police I did not, you know.

*Id.* at 20. When asked if either of the times Townes touched him hurt, Tomey answered, "No not really." *Id.*

[5] Townes testified that he received a piece of mail indicating that his mail was stopped due to no numbers. According to his testimony, he went and spoke with Tomey's wife who belligerently told him she would take care of it. Townes left and returned home to see spray paint of "6-6-0-0" on his mailbox

and "it is one (1) of the worst spray paints you could ever see. Which literally sent me—it set me off." *Id.* at 32. He testified that he was packing his things when Tomey came to his door. He testified: "Yes, I am a little frustrated but I am not fixing to automatically just blow up." *Id.* at 33. Townes asked Tomey to leave, and Tomey left but returned within two minutes. After further conversation, which included Townes calling Tomey "the 'N' word," Townes asked Tomey again to leave his property. *Id.* at 34. Townes told Tomey that he used "the 'N' word . . . based off of ignorance not race." *Id.* at 35. Tomey then ran up Townes's porch and "gets up in" Townes's face and says "What are you going to do, hit me?" *Id.* According to Townes, Tomey also stated: "What you going to do about it? This is my property?" *Id.* Townes then testified: "That is when I push him, yes I push him. Push him off and tell him to leave." *Id.*

[6] On cross-examination, when asked why he did not call the police instead of shoving Tomey, Townes answered:

> Because, . . . he crossed personal space. And, he was already touching me physically. He [sic] stomach was on my stomach, and he was in my face like. He was spitting kind of like – I could literally feel the spit coming out as he is telling me to hit him with this animosity in his system.

*Id.* at 36. Townes also testified that he touched Tomey a second time because he had asked Tomey to leave his property and he refused, but that he did not push Tomey a second time. The court found Townes guilty of the lesser included offense of battery as a class B misdemeanor. The court stated in part:

> Just for the record, I do find that you touched him in a rude, insolent, or angry manner, and that it was not necessarily both times in self-defense. Okay. I think you got over heated and that is not proper. We can't touch people, okay. I don't – I am not saying that you wouldn't have a right to be frustrated. I am sure you were frustrated. I am not saying that you didn't have a right to, its [sic] just that we can't touch people.

*Id.* at 52. The court sentenced Townes to 180 days with 176 days suspended.

### *Discussion*

[7] The issue is whether the evidence is sufficient to support Townes's conviction for battery and negate his claim of self-defense. Townes argues that the evidence was insufficient to support his conviction. He asserts that he was afraid and was defending himself from what he believed was an attack on his person. He contends that he pushed Tomey in an attempt to keep Tomey from hitting him and that his actions were justified based on self-defense.

[8] The State argues that either instance of pushing was sufficient to sustain Townes's conviction for battery. The State asserts that Townes cannot claim he did not provoke, instigate, or participate willingly in the violence as Townes initiated physical contact, called Tomey a racial slur, and pushed him again after Tomey retreated.

[9] Ind. Code § 35-42-2-1 governs the offense of battery and, at the time of the offense, provided that "a person who knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner . . . commits battery, a

Class B misdemeanor."[1] "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c).[2] "No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary." *Id.* A valid claim of self-defense is legal justification for an otherwise criminal act. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). In order to prevail on a self-defense claim, a defendant must demonstrate he was in a place he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. *Id.* The amount of force a person may use to protect himself depends on the urgency of the situation. *Harmon v. State*, 849 N.E.2d 726, 730-731 (Ind. Ct. App. 2006). When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished. *Id.* at 731.

[10] When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Wilson*, 770 N.E.2d at 800. If a defendant is convicted despite his claim of self-defense,

---

[1] Subsequently amended by Pub. L. No. 65-2016, § 33 (eff. July 1, 2016).

[2] Ind. Code § 35-41-3-2(d) provides:

> A person: (1) is justified in using reasonable force, including deadly force, against any other person; and (2) does not have a duty to retreat; if the person reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle.

Townes does not cite to or develop an argument with respect to subsection (d).

we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Id*. at 800-801. A mutual combatant, whether or not the initial aggressor, must declare an armistice before he may claim self-defense. *Id*. at 801; *see* Ind. Code § 35-41-3-2(g) (providing "a person is not justified in using force if . . . the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action"). The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson*, 770 N.E.2d at 801. We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id*.

[11] The record reveals that Tomey testified that Townes became irritated, called him "the 'N' word" and then shoved him or punched him in the chest. Transcript at 25. Tomey testified that he "turned and went for the fence, when [Townes] shoved [him] a second time at the fence," which consisted of "[j]ust a push from the back." *Id.* at 10, 20. Officer Meier testified that Townes stated: "I did lose my cool, and I pushed him to get him off my property." *Id.* at 28. Officer Meier also testified that Tomey told him that "he turned to walk away and he got pushed." *Id.* at 29.

[12] Based upon the evidence, the court as the trier of fact could infer that Townes participated willingly in the violence, that he did not have a reasonable fear of great bodily harm, or that the amount of force he used was unreasonable under the circumstances. We conclude based upon the record that the State presented evidence of a probative nature from which a reasonable trier of fact could have determined beyond a reasonable doubt that Townes did not validly act in self-defense and that he was guilty of battery as a class B misdemeanor. *See Rodriguez v. State*, 714 N.E.2d 667, 670-671 (Ind. Ct. App. 1999) (noting that the defendant's version of events differed from other testimony, declining to reweigh the evidence, and holding that sufficient evidence existed to rebut the defendant's claim of self-defense), *trans. denied*.

## *Conclusion*

[13] For the foregoing reasons, we affirm Townes's conviction for battery as a class B misdemeanor.

[14] Affirmed.

May, J. and Pyle, J., concur.