**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARRYL SHEPHERD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1111-CR-600 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-0911-MR-97663

**July 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Darryl Shepherd appeals his conviction for possession of a firearm by a serious violent felon, a Class B felony, and his sentence. Shepherd raises three issues for our review:

1. Whether the State presented sufficient evidence to disprove his defense of self-defense;

2. Whether the trial court abused its discretion when it sentenced him; and

3. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1991, Shepherd was convicted of two counts of Class C felony battery. In 1993, he was convicted of dealing in cocaine, as a Class B felony. Under Indiana law, each of these convictions made Shepherd a serious violent felon, and he was prohibited from carrying a firearm. Ind. Code § 35-47-4-5.

In 2009, Shepherd owned and worked at an automobile body shop in Indianapolis. He rented space at the shop to Gary Couch. On November 25, Shepherd approached Couch about Couch's overdue rent payment. Couch responded aggressively, uttering racial slurs to Shepherd and threatening to kill him.

In response to Couch's aggression, Shepherd removed a .38 caliber revolver from his shirt and shot Couch in the leg. This prompted witnesses to call 9-1-1. Shepherd then attempted to leave in his car, but Couch kicked the rear door of Shepherd's car, which inspired Shepherd to turn his car around and drive it into Couch, knocking him down.

2

Couch got up and tried to access Shepherd through the driver's door while Couch's son, who was nearby, kicked in the rear driver's side window. Shepherd then shot Couch three times, shot Couch's son once, and left the scene. Couch died before emergency personnel arrived.

Shepherd turned himself in to authorities the next day. After waiving his rights, Shepherd thrice admitted that the firearm he had used was his. On November 30, the State charged Shepherd with murder, a felony; battery, as a Class C felony; and unlawful possession of a firearm by a serious violent felon, a Class B felony. The State also alleged Shepherd to be an habitual offender.

At the ensuing bench trial, after the State rested Shepherd moved for involuntary dismissal of each of the State's charges on the grounds that the evidence established his defense of self-defense. The trial court granted Shepherd's motion with respect to the murder and battery allegations but denied the motion with respect to the unlawful possession of a firearm charge. In particular, the court denied Shepherd's motion on that charge because Shepherd "had the gun on his person before he knew he'd need it, and that was inside the garage before . . . a threat allowing the use of deadly force had been made." Transcript at 652.

Shepherd did not present any evidence on his behalf following the court's ruling on his motion for involuntary dismissal. The court then found Shepherd guilty of unlawful possession of a firearm by a serious violent felon. The court further found that Shepherd was an habitual offender.

The court held Shepherd's sentencing hearing on October 26, 2011. After hearing the parties' arguments, the court stated as follows:

> The defendant's lifestyle changed since the 90[s], the fact that he surrendered and cooperated with authorities, his poor health and the fact that he was in his own mind acting in self[-]defense through a lot of this are significant mitigating factors. The fact that he was on probation, he has two prior probation violations, one prior felony conviction are aggravating factors. But the biggest aggravating factor is as a result of his violation of this law someone died. If he hadn't had the gun, Mr. Couch doesn't die. If he would have called 9-1-1 instead of pulling a gun, Mr. Couch doesn't die. I can understand that there are sentiments in some corners that if you have a problem you carry a gun. Mr. Shepherd wasn't allowed to do that. He had to call 9-1-1 instead. The fact that someone died is the overriding aggravating factor.

Id. at 702-03. The court then concluded that the aggravators outweighed the mitigators and sentenced Shepherd to fifteen years on the Class B felony conviction. The court enhanced that sentence by ten years based on the habitual offender finding. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

Shepherd first contends that the State failed to disprove his defense of self-defense with respect to the firearm charge. As our supreme court has explained:

> A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Ind. Code § 35-41-3-2(a); Wallace v. State, 725 N.E.2d 837, 840 (Ind. 2000). In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. McEwen v. State, 695 N.E.2d 79, 90 (Ind. 1998). When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. Id. If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable

4

doubt. Taylor v. State, 710 N.E.2d 921, 924 (Ind. 1999). . . . The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. Sanders v. State, 704 N.E.2d 119, 123 (Ind. 1999). We neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. Id.

Wilson v. State, 770 N.E.2d 799, 800-01 (Ind. 2002).

We have discussed how the defense of self-defense applies to a charge of unlawful

possession of a firearm by a serious violent felon as follows:

[W]e do not believe that the Indiana Legislature, in prohibiting the possession of a firearm by a serious violent felon, intended to preclude the assertion of self-defense. . . .

Other courts . . . have recognized self-defense as a viable defense [on similar charges], provided that the particular circumstances warranted such defense. In People v. King, 22 Cal. 3d 12, 148 Cal. Rptr. 409, 414, 582 P.2d 1000, 1005 (1978), for example, the court held that the legislature, in prohibiting the possession of a concealable firearm by a person previously convicted of a felony, did not intend to preclude the assertion of self-defense and closely related defenses to a charge of violating the statute. There, the defendant had been attending a party at a friend's house when the house came under attack from some uninvited and intoxicated individuals. Id. at 411, 148 Cal. Rptr. 409, 582 P.2d at 1002. During the melee, the defendant was given a small pistol from another guest to use in protecting the house and the occupants. He fired the gun over the heads of the attackers, slightly wounding one and frightening away the remainder. At trial, the judge refused to give an instruction that self-defense would be a defense to the weapon-possession charge and the defendant appealed. On review, the King Court determined that the prohibition of a felon possessing a firearm was not intended to affect a felon's right to use a concealable firearm in self-defense, but was intended only to prohibit members of the affected classes from arming themselves with concealable firearms or having such weapons in their custody or control in circumstances other than those in which the right to use deadly force in self-defense exists or reasonably appears to exist[]. Id. at 416, 148 Cal. Rptr. 409, 582 P.2d at 1007. Thus, continued the court, when a felon, like the defendant in question, is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, and without preconceived design on his part a firearm is made available to him, his

5

temporary possession of that weapon for a period no longer than that in which the necessity or apparent necessity to use it in self-defense continued would not violate the statutory prohibition against possession of a concealed firearm by a felon. Id.

\* \* \*

Here . . . , there is a legitimate question regarding Harmon's claim of self-defense. Harmon's proffered evidence reveals, for example, that he broke into the locked gun case and obtained Theresa's handgun only after he saw John retrieve a shotgun from John's truck. These events occurred in the middle of a heated altercation between Harmon and Theresa, on the one hand, and John, Audrey, and Palm, on the other. According to Harmon, when he first took possession of the firearm, he was outnumbered, concerned about John's intention with the shotgun, and believed himself and Theresa to be in imminent peril of great bodily harm. Further, Harmon's possession of the firearm was temporary and lasted only for the period of time necessary to abate the danger. Under these circumstances, we conclude . . . that Indiana's prohibition against a felon possessing a firearm was not intended to affect his or her right to use a firearm in self-defense, but was intended only to prohibit members of the affected classes from arming themselves with firearms or having such weapons in their custody or control in circumstances other than those in which the right to use deadly force in self-defense exists or reasonably appears to exist[].

Because the evidence legitimately tends to support Harmon's self-defense theory, it is admissible and the jury should have had the opportunity to consider the circumstances as they appeared to Harmon. . . .

Harmon v. State, 849 N.E.2d 726, 732-34 (Ind. Ct. App. 2006) (emphasis added; some citations omitted).

Shepherd moved for involuntary dismissal of the firearm charge on the basis that the State's evidence demonstrated his possession of the firearm was in self-defense. The trial court denied the motion after concluding that the State's evidence showed that Shepherd possessed the firearm before he had a reasonable fear of death or great bodily harm.

6

On appeal, Shepherd asserts that the trial court's conclusion is not supported by the evidence. Shepherd notes that there was a brief delay early in his confrontation with Couch before Shepherd shot Couch in the leg. During this delay, Couch exited Shepherd's shop. As Shepherd states, "it was unclear exactly when he took possession of the gun" because he testified that he only grabbed the gun after Couch began acting aggressively. Appellant's Br. at 12. It appears that Shepherd is suggesting that, during this brief delay, he first possessed the firearm in anticipation of Couch returning and Shepherd needing to defend himself.

Shepherd's reading of the record is contrary to our standard of review. Again, our standard of review here is the same as our standard of review for any sufficiency of the evidence challenge: we consider only the evidence most favorable to the judgment. Wilson, 770 N.E.2d at 801; Sanders, 704 N.E.2d at 123. Indeed, Shepherd's argument here both ignores the fact that the gun was his[1] and is based on statements he made to the trial court at sentencing, which were well after he had rested his case at trial, the court had declared him guilty of the charge, and the trial had ended. We will not entertain this purported evidence now.

In any event, the State's evidence disproves Shepherd's self-defense claim with regard to the unlawful possession charge. As stated in Harmon, self-defense is available to a charge of unlawful possession of a firearm only where such possession is "without

---

[1] In a footnote in his reply brief, Shepherd makes the following cursory comment: "The State claims that Shepherd calling the gun[] 'my gun' in his statement to police constituted an admission that he owned the gun and had exclusive possession of it. This is an invalid conclusion." Reply Br. at 3 n.3. Shepherd's commentary is unclear. But, insofar as Shepherd's argument in his reply brief is that the State improperly conflates gun ownership and gun possession (and insofar as Shepherd's proposed distinction has any merit), the State sufficiently demonstrated that Shepherd both owned and possessed the firearm in question.

preconceived design on [the defendant's] part [and the] firearm is made available to him." 849 N.E.2d at 733 (discussing King, 582 P.2d at 1007). Neither of those conditions occurred here. Rather, Shepherd admitted to police that the firearm was his firearm. And two of the State's witnesses each testified that they saw Shepherd remove the firearm from inside his shirt after Couch became aggressive towards Shepherd. Transcript at 110, 417. A reasonable conclusion from that evidence is that Shepherd possessed the firearm before he had a reasonable fear of death or great bodily harm.

Thus, Shepherd's possession of the firearm was neither "without preconceived design" nor because the firearm was "made available to him." See Harmon, 849 N.E.2d at 732-33. The State's evidence demonstrates that the firearm was not in a lawful place and then made available to Shepherd but, rather, unlawfully possessed by Shepherd prior to his engagement with Couch. See id. at 732-34; see also Johnson v. State, 256 Ind. 497, 506-07, 269 N.E.2d 879, 884 (1971) ("Had the pistol been in a location which was lawful, and the appellant obtained it from such position to defend himself, we might have a legitimate question.").

Based on the State's evidence, a reasonable person would say that the State negated Shepherd's self-defense claim beyond a reasonable doubt. See Wilson, 770 N.E.2d at 801. The State sufficiently demonstrated that Shepherd possessed the firearm before he had a reasonable fear of death or great bodily harm. Shepherd's argument to the contrary on appeal—to the extent it is actually based on evidence presented at his trial—simply amounts to a request for this court to reweigh the State's evidence, which we will not do. See id. We affirm his conviction.

8

**Issue Two: Improper Aggravator**

Shepherd next contends that Couch's death was an improper aggravating factor for the court to consider when sentencing him. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.

> An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."
>
> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. . . .
>
> [However, b]ecause the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, . . . a trial court can not now be said to have abused its discretion in failing to "properly weigh" such factors.

Id. at 490-91 (citations omitted).

Shepherd's argument here is that the trial court's use of Couch's death as an aggravator impermissibly punishes Shepherd for a crime he did not commit, namely, the alleged murder of Couch.[2] Shepherd further asserts that, if he had not had the firearm to

---

[2] We agree with the State that, insofar as Shepherd attempted to raise a double jeopardy or a due process argument on appeal, he waived that argument for failing to support it with cogent reasoning. Ind. Appellate Rule 46(A)(8)(a). And we note that, for the first time in his reply brief, Shepherd asserts that

defend himself, he might well have been the victim of Couch's aggression. As such, he continues, the trial court's comment that "[i]f [Shepherd] hadn't had the gun, Mr. Couch doesn't die" was "invalid." Appellant's Br. at 14; Transcript at 703.

The trial court did not abuse its discretion in finding Couch's death to be an aggravating circumstance of Shepherd's unlawful possession of the firearm. Shepherd acknowledges that, under Indiana law, the trial court may consider the nature and circumstances of an offense as a proper aggravator. See Appellant's Br. at 13-14; see e.g., McCann v. State, 749 N.E.2d 1116, 1120 (Ind. 2001). Here, the evidence plainly showed that Couch died as a result of Shepherd's unlawful possession of the firearm. Further, the trial court's sentencing statement shows that the court was just as concerned with what Shepherd did not do as it was with the end result of what he did do. As the court stated, Shepherd could have called 9-1-1 at the outset of the confrontation. He did not.[3] The court's analysis was not "clearly against the logic and effect of the facts and circumstances" before it. Anglemyer, 868 N.E.2d at 490.

Neither are we persuaded by Shepherd's suggestion that enhancing his sentence for his Class B felony to fifteen years—five years greater than the advisory sentence but five years lower than the statutory maximum, see I.C. § 35-50-2-5—is equivalent to an end-run around his acquittal on the State's murder charge. This court has recognized that

the trial court improperly failed to consider that the victim induced the offense. Reply Br. at 7. A party may not raise an argument for the first time in a reply brief, and this is also waived. See, e.g., Naville v. Naville, 818 N.E.2d 552, 553 n.1 (Ind. Ct. App. 2004).

[3] In a sentence at the end of his argument on this issue, Shepherd states that "[t]he court's suggestion that calling 9-1-1 was a viable alternative option . . . was not supported by the evidence." Appellant's Br. at 14. As with his fleeting references to double jeopardy and due process, this one-sentence, passing reference is not an argument supported by cogent reasoning. App. R. 46(A)(8)(a).

a victim's death can be considered in sentencing even though the death formed part of another charge for which the defendant was acquitted. See, e.g., Deloney v. State, 938 N.E.2d 724, 732 (Ind. Ct. App. 2010), trans. denied (holding that the defendant's acquittal on a murder charge "does not preclude the trial court from using the circumstances of the [victim's] death as an aggravating factor when determining his sentence for the other two crimes"). And recognizing Couch's death as an aggravator to the unlawful possession of a firearm charge does not negate Shepherd's self-defense claim, as he suggests in his reply brief. See Reply Br. at 5-6. As described in Issue One, the State sufficiently demonstrated that Shepherd unlawfully possessed the firearm before his need for self-defense arose.

In essence, Shepherd's argument on this issue amounts to a request for this court to discount the weight the trial court assigned to this valid aggravator, which we will not do. Anglemyer, 868 N.E.2d at 490-91. The trial court did not abuse its discretion when it considered Couch's death as an aggravating circumstance of Shepherd's unlawful possession of the firearm.

**Issue Three: Inappropriateness of Sentence**

Finally, Shepherd argues that his fifteen-year sentence for his Class B felony conviction is inappropriate in light of the nature of the offense and his character.[4] Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court."

---

[4] Shepherd does not challenge his ten-year enhancement for being an habitual offender.

11

Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offense and his character. See Ind. Appellate Rule 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

In support of a reduced sentence, Shepherd notes that his lifestyle has changed since his felony convictions from the early 1990s; he surrendered and cooperated with police in this case; he had a strong relationship with his son and grandchildren; that "there was no indication . . . that he used the weapon for any purpose beyond self-

defense"; and that he has serious health issues, such that even the minimum sentence of six years, along with the habitual offender enhancement, "may well constitute a life sentence." Appellant's Br. at 15-17.

The trial court considered all of Shepherd's concerns in the first instance, and we cannot say that his fifteen-year sentence for his Class B felony is inappropriate. Shepherd's offense resulted in the death of one person and the injury of a another person. He has an established criminal history, he has multiple probation violations, and he committed the instant offense while on probation for a 2008 Class D felony conviction for intimidation. In light of the nature of the offense and his character, we cannot say that Shepherd's sentence is such an outlier that we should exercise our discretion to reduce it. Accordingly, we conclude that Shepherd's sentence is not inappropriate.

**Conclusion**

In sum, the State presented sufficient evidence to rebut Shepherd's claim of self-defense on the charge that he unlawfully possessed a firearm. We further hold that the trial court did not abuse its discretion when it sentenced Shepherd and that his sentence is not inappropriate. As such, we affirm Shepherd's conviction and sentence.

Affirmed.

RILEY, J., and DARDEN, J., concur.